Earl W. GREEN, Appellant,

v.

U. S. CHEWING GUM MFG. CO., and
H. L. Wilkinson, Appellees.

No. 15293.

United States Court of Appeals
Fifth Circuit.

July 15, 1955.

Sam B. Spence, Steve Latham, Dugger & Latham, Wichita Falls, Tex., for appellant.

Lee Sellers, Nelson, Montgomery, Robertson & Sellers, Wichita Falls, Tex., for appellees.

Before RIVES, Circuit Judge, and DAWKINS and DE VANE, District Judges.

RIVES, Circuit Judge.

The question to be decided is whether, within the venue section of the Clayton Act,[1] a corporation "transacts business"

---

1. "§ 22. *District in which to sue corporation*

"Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all

in a judicial district when the corporation located outside the district receives orders by mail sent from within the district, and in filling such orders delivers a substantial amount of its product into the district, but does no soliciting there except by mail and performs no other substantial activity there.

The plaintiff was engaged in the business of selling ball chewing gum both wholesale and through retail vending machines, and had been so engaged for about twenty years. In May, 1949, the defendant, U. S. Chewing Gum Mfg. Co., solicited the plaintiff to purchase all of his merchandise from said defendant, promising to supply all of his needs at that time and in the future. Accordingly, the plaintiff did purchase all of his ball chewing gum from said defendant until on or about August 3, 1950, at which time, for the reasons hereinafter stated, said defendant refused to sell him its products direct, and notified him that, from such date forward, he would be required to purchase such products through his competitor, the defendant H. L. Wilkinson, at an increase in price of three cents per pound plus freight.[2] Said defendant's "Star" brand ball gum was used by most of the ball chewing gum operators in Texas.

An association of such operators, known as the Texas Operators, was organized in 1946, of which the defendant H. L. Wilkinson was a member. The members of that association

"met and agreed that they would divide the State of Texas into various territories and that each member thereof would have the right to operate in such territory to the exclusion of any other member. It was further agreed and decided that the association would join together and by collective bargaining force the manufacturers of ball chewing gum to sell only to members of the

association. That it was understood and agreed by the members of such association that the defendant H. L. Wilkinson was to have as his territory the same areas in which the plaintiff was conducting his business."

Further, the complaint read:

"Plaintiff alleges that the purpose of the defendant H. L. Wilkinson and the other operators of the Texas Operators Association was to eliminate the plaintiff as a competitor of the defendant, H. L. Wilkinson, and that the defendant, U. S. Chewing Gum Mfg. Co., well knowing of such purpose, complied with the demand of the defendant H. L. Wilkinson and other operators of such association by refusing to sell its products to the plaintiff. Plaintiff alleges that as a result of such acts on the part of the defendants he has suffered the damages hereinafter set out."

The defendant, U. S. Chewing Gum Mfg. Co., moved to dismiss the complaint for lack of jurisdiction over it or improper venue, supporting its motion by an affidavit of its President to the effect, in part, that:

"The sole connection of the defendant U. S. Chewing Gum Mfg. Co. with the Northern District of Texas, in which this suit is pending, at the time of filing this affidavit, as well as at the time it was served with process herein, is that such defendant fills orders at its Oakland, California plant from two regular customers within such district, one such customer being located at Vernon, Texas, and the other at Crosbyton, Texas. That such orders are received irregularly, by mail, and are filled by such defendant by shipping the merchandise via motor freight truck from Oakland, California to Vernon and Crosbyton, re-

---

process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." 15 U.S. C.A. § 22.

2. It appears that the price at which said

defendant had been selling its ball chewing gum to plaintiff on orders of 100 pounds or more had been thirty-five cents per pound, less a discount of 2% on payment within ten days, freight prepaid.

spectively. That both such customers remit payment for such shipments by mail. I am away from my office and business records at this time, and hence cannot say exactly what percentage of the gross business of U. S. Chewing Gum Mfg. Co. is represented by shipments to these two customers, but I know it is a very small part of the total business of my company. To my knowledge, U. S. Chewing Gum Mfg. Co. has no other business in or connection with anyone or firm in the Northern District of Texas."

In opposition to such motion to dismiss, the plaintiff filed his affidavit to the effect, in part, that:

"At the present time the U. S. Chewing Gum Mfg. Co. sells its products to John Horn, Abilene, Texas, H. L. Wilkinson, Vernon, Texas, G. O. Paudler, Crosbyton, Texas, Everett Graff, Dallas, Texas, William Davies, Dallas, Texas, and Ben Rauch, Forth Worth, Texas, all residing and doing business in this district. These distributors own a total of about ten thousand four hundred (10,400) chewing gum distributing machines. They purchase from the defendant U. S. Chewing Gum Mfg. Co. a total of approximately six thousand (6,000) pounds of chewing gum per month. Up until August, 1950, I purchased from the company between one and two thousand pounds of chewing gum per month.

"I have been in the chewing gum vending business for about twenty years. During this time I have purchased gum from many companies. I have ordered my gum by mail from all of these companies. None of the companies have ever had a regular salesman in this district. The gum has always been shipped directly from the factory to my place of business. In this type of business there is no reason for chewing gum manufacturing companies to have a regular salesman, representative or warehouse in this district because the business can be conducted more efficiently and economically by mailing orders directly to the factory and having the gum shipped by freight. This is particularly true at the present time with respect to the defendant U. S. Chewing Gum Mfg. Co. since its sales are to the above named operators only and it is not soliciting business in this district." [3]

The district court sustained the motion to dismiss, and dismissed the complaint as to the defendant, U. S. Chewing Gum Mfg. Co., without prejudice, and this appeal ensued. The district court did not find that the deliveries into the judicial district were not "substantial," but stated simply:

"I do not believe, gentlemen, that a citizen of California who receives orders by mail and then forwards the merchandise ordered in interstate commerce to the customer who has ordered by mail is amenable to suit filed against him in the place of the purchasers' residence."

Upon said defendant's admission of two regular customers within the district, and the plaintiff's affidavit that the said defendant delivered within the district approximately six thousand (6,000) pounds of chewing gum per month, and the calculation of such sales in terms of dollars per year at slightly more than $25,000.00 per annum, it must be held that the deliveries within the district were substantial.

■ It will not do to deny substantially by replying, as said defendant does in its President's affidavit, that " * * * the gross business of U. S. Chewing Gum

**3.** From a comparison of the two affidavits together with the averments of the complaint, it appears that the "two regular customers within such district," which said defendant admitted were members of the Texas Operators Association, viz.: the defendant H. L. Wilkinson, located at Vernon, Texas, and one G. O. Paudler, located at Crosbyton, Texas.

Mfg. Co. * * * represented by shipments to these two customers * * * is a very small part of the total business of my company," for if that were the rule, we would have different tests of substantiality applying to different corporations according to their size; a large corporation could, with impunity, engage in the same acts which would subject a smaller corporation to jurisdiction and venue. We agree with Judge Allan K. Grim of the Eastern District of Pennsylvania that the test is rather, "whether or not the sales would appear to be substantial from the average businessman's point of view." Sunbury Wire Rope Manufacturing Company v. United States Steel Corporation, D.C.E.D.Pa., 129 F.Supp. 425, 427.

In considering the suability of foreign corporations as affected by the due process clause of the Fourteenth Amendment, the Supreme Court in 1945, in International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 326 U.S. 310, 317, 318, 319, 66 S.Ct. 154, 158, 90 L.Ed. 95, rejected the "presence" test as begging "the question to be decided. * * * the terms 'present' or 'presence'", according to Chief Justice Stone, "are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process. * * * Those demands may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system * * *, to require the corporation to defend the particular suit which is brought there [and] * * * that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' * * * An 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business is relevant in this connection."

By an extended application of the logic of that case, a majority of the Court ruled in Travelers Health Ass'n, v. Com. of Virginia, ex rel. State Corp. Comm., 1950, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154, that, notwithstanding it was represented in the State by no agents whatsoever, a foreign mail order insurance company had through its policies developed such contacts and ties with Virginia residents that the State, by forwarding notice to the company by registered mail only, could institute enforcement proceedings under its Blue Sky Law leading to a decree ordering cessation of business pending compliance with that Act.

The question of whether cases governed by federal law are to be tried in one locality or another is now no longer to be tested by the rigid rules set forth in Green v. Chicago, Burlington & Quincy Ry. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916, the Supreme Court having since that decision interpreted its subsequent holding in Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684, as recognizing that, "Refinements such as previously were made under the 'mere solicitation' and 'solicitation plus' criteria * * * were no longer determinative." United States v. Scophony Corp., 333 U.S. 795, 807, 68 S.Ct. 855, 861, 92 L.Ed. 1091; Lone Star Package Car Co. v. Baltimore & O. R. Co., 5 Cir., 212 F.2d 147, 155. Of course, no question of suability as affected by the due process clause of the Fourteenth Amendment has arisen in the present case, but this Court, in the last cited Lone Star Package Car Co. case, supra, recognized that the rationale of the "'fair play and substantial justice'" doctrine as set forth in International Shoe Co. v. State of Washington, etc., supra, extends over into the consideration of the suability of foreign corporations under Acts of Congress.

As in Travelers Health Ass'n v. Com. of Virginia ex rel. State Corp. Comm., supra, so here too a public purpose is served by suits of this character. The enforcement of the antitrust laws is furthered by private actions for treble damages. Kinnear-Weed Corp. v. Humble

Oil & Refining Co., 5 Cir., 214 F.2d 891, 893, certiorari denied 348 U.S. 912, 75 S.Ct. 292; Maltz v. Sax, 7 Cir., 134 F.2d 2, 4. As the Seventh Circuit observed in the Maltz case, supra, "This grant to persons damaged—a cause of action for treble damages—was for the purpose of multiplying the agencies which would help enforce the Act and therefore make it more effective."

In considering the particular statute here involved, 15 U.S.C.A. § 22, the Supreme Court has said:

"And we think it clear that, as applied to suits against corporations for injuries sustained by violations of the Anti-Trust Act, its necessary effect was to enlarge the local jurisdiction of the district courts so as to establish the venue of such a suit not only, as theretofore, in a district in which the corporation resides or is 'found,' but also in any district in which it 'transacts business'— although neither residing nor 'found' therein—in which case the process may be issued to and served in a district in which the corporation either resides or is 'found'; and, further, that a corporation is engaged in transacting business in a district, within the meaning of this section, in such sense as to establish the venue of a suit—although not present by agents carrying on business of such character and in such manner that it is 'found' therein and is amenable to local process—if in fact, in the ordinary and usual sense, it 'transacts business' therein of any substantial character.
* * *

"Thus construed, this section supplements the remedial provision of the Anti-Trust Act for the redress of injuries resulting from illegal restraints upon interstate trade, by relieving the injured person from the necessity of resorting for the redress of wrongs committed by a nonresident corporation, to a district, however distant, in which it resides or may be 'found'—often an insuperable obstacle—and enabling him to institute the suit in a district, frequently that of his own residence, in which the corporation in fact transacts business, and bring it before the court by the service of process in a district in which it resides or may be 'found.'" Eastman Kodak Co. v. Southern Photo Materials Co., supra, 273 U.S. at pages 373–374, 47 S.Ct. at page 403.

Again in United States v. Scophony Corp., supra, 333 U.S. at page 808, 68 S.Ct. at page 862, the Court said of the Eastman Kodak Co. decision:

"Thus, by substituting practical, business conceptions for the previous hair-splitting legal technicalities encrusted upon the 'found'— 'present'—'carrying-on-business' sequence, the Court yielded to and made effective Congress' remedial purpose. Thereby it relieved persons injured through corporate violations of the antitrust laws from the 'often insuperable obstacle' of resorting to distant forums for redress of wrongs done in the places of their business or residence. A foreign corporation no longer could come to a district, perpetrate there the injuries outlawed, and then by retreating or even without retreating to its headquarters defeat or delay the retribution due."

In its brief, appellee U. S. Chewing Gum Mfg. Co. replies to the rationale of the decisions just cited as follows:

"Appellee believes it is hardly necessary to point out that this proposition is a two-edged sword; equal hardship may be visited upon a defendant by compelling it to prepare its defenses for presentation thousands of miles from its place of business. Appellee should not be compelled to come to Wichita Falls, Texas from Oakland, California to defend this suit on the showing made below."

■ True, as said in International Shoe Co. v. State of Washington, etc., supra, "An 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or

principal place of business is relevant in this connection." Comparing the plights of the plaintiff and of the corporate defendant, it would appear more consistent with justice and fairness, and especially with the public purpose of furthering the enforcement of the anti-trust laws, that the corporate defendant should defend the case in the judicial district where it had transacted business of a substantial character to the injury of the plaintiff, than that the plaintiff should be barred by probably "the 'often insuperable obstacle' of resorting to distant forums for redress of wrongs done in the places of their business or residence." United States v. Scophony Corp., supra, 333 U.S. at page 808, 68 S. Ct. at page 862.

As to whether the deliveries of substantial amounts of its product into a judicial district constitute the transaction of business by a foreign corporation therein within 15 U.S.C.A. § 22, we find ourselves in entire agreement with the logic of District Judge Grim in Sunbury Wire Rope Manufacturing Company v. United States Steel Corporation, supra [129 F.Supp. 427]:

"The selling of its product is the most important part of a business. There can be a substitute for every department of a business but sales. Products or parts of them can be bought instead of manufactured, but there can be no substitute for sales. Without sales no business can exist. A sale is never complete until delivery is made, since it is the delivery which entitles the manufacturer to money and it is the earning of money which is the real purpose of business. No ordinary businessman would be likely to say that the delivery of almost $600,000 worth of a company's product into the Eastern District of Pennsylvania within less than two years as part of sales transactions does not constitute the transacting of business in that district. Application of the 'practical, everyday business or commercial concept' test of what constitutes 'transacting' business causes me to come to the conclusion that Detroit Steel Corporation was transacting business in the Eastern District of Pennsylvania when the present action was filed and service was made on it."

 We hold that the district court erred in dismissing the plaintiff's action as to the defendant U. S. Chewing Gum Mfg. Co. The judgment is, therefore, reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.