Johnny R. AUSTAD, doing business as Austad Steel & Construction Company, Plaintiff,

v.

UNITED STATES STEEL CORPORATION et al., Defendants.

INDEPENDENT IRON WORKS, Inc., a corporation, Plaintiff,

v.

UNITED STATES STEEL CORPORATION et al., Defendants.

Nos. 34967, 35080.

United States District Court
N. D. California, S. D.

May 24, 1956.

Hildebrand, Bills & McLeod, Oakland, Cal., for plaintiffs.

McCutchen, Thomas, Matthews & Greene, San Francisco, Cal., for defendant United States Steel Corporation.

EDWARD P. MURPHY, District Judge.

These are motions by defendant Inland Steel Company to quash purported service of summons, and to dismiss for lack of venue and jurisdiction in the above companion cases.

*The Motion To Quash Purported Service Of Summons*

Fed.R.Civ.P. 4(d) (3), 28 U.S.C., provides that service on a foreign corporation may be made on

"* * * an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process * * *."

Inland Steel Company is a Delaware corporation with a principal place of business in Chicago, Illinois. It is neither registered nor qualified to do business in California, nor does it maintain any offices or representatives in California. It has authorized no agent to accept service of process upon it in California.

Service was made upon one Sirene, the agent for service of a wholly owned subsidiary of the defendant Inland Steel Company. That subsidiary, known as Inland Steel *Products* Company is not a party in this case. After service upon Sirene, the Marshal made two returns relative to that service. The first stated that he had served Inland Steel *Products* Company by service upon its statutory agent, Sirene. The second stated that he had not served Inland Steel Company for the reason that Sirene had stated that he was not authorized to accept service of process for Inland Steel Company, as distinguished from Inland Steel *Products* Company. Although, therefore, neither return may be technically sufficient, there are more substantial grounds for disposing of this motion. The question is whether service upon Sirene, regardless of his protestations, was, either by reason of his personal relationship to defendant Inland Steel Company or by reason of the relationship of the subsidiary, Inland Steel *Products* Company to defendant Inland Steel Company, a sufficient service upon Inland Steel Company to comply with Rule 4(d) (3). The answer to that question depends upon whether Sirene or his company is the agent of Inland Steel Company. The uncontroverted affidavits on file herein make it clear that Sirene bears no such direct personal relationship to Inland Steel Company as to make him its agent. The same affidavits also reveal that in no way is the relationship of parent and subsidiary abridged so as to raise a relationship of principal and agent between Inland Steel and Inland Steel *Products*. Absent a showing of such a relationship of agency between parent and subsidiary, the separate corporate entities of parent and subsidiary are entitled to be treated as separate entities for purposes of antitrust law as well as for other purposes. Cannon Mfg. Co. v. Cudahy Packing Co., 1925, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634. It should be noted that this is not a case in which it is impossible for plaintiff to show that a parent-subsidiary relationship is in fact also a principal-agent relationship without further proceedings. Plaintiff here has had the opportunity of discovery proceedings, but has introduced no competent results of such proceedings to make any showing that the subsidiary is the agent of the principal. Certain excerpts of what are said to be depositions have been included in the brief of plaintiff. They are unsigned, and are not to be considered in evidence. To avoid unnecessary delay in this case, however, it may be noted that the character of the showing purported to be made in these documents is in any case insufficient to make out a principal and agent relationship between Inland Steel Company and Inland Steel *Products* Company.

The motion to quash purported service of summons upon Inland Steel Company through service upon Sirene is therefore granted.

The next service of process which occurred in this case was properly made upon Inland Steel Company at its home office in Chicago, Illinois, under 15 U.S. C.A. § 22, and raises no question of validity provided there is jurisdiction over Inland Steel Company.

■ *The Motion To Dismiss For Lack Of Jurisdiction And Improper Venue*

Defendant points out that the complaint in this case does not refer to 15 U.S.C.A. § 22, Clayton Act, § 12, which provides the broadest jurisdictional basis for antitrust suits, and seeks instead to predicate jurisdiction over defendant Inland Steel Company on the narrower jurisdictional basis of 15 U.S.C.A. § 15, Clayton Act, § 4. It should be clear by this time, however, that the jurisdiction of this court is not to be determined by the niceties of pleading. This is a civil

anti-trust action. Congress has provided that:

> "Any suit * * * under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; * * *." 15 U.S. C.A. § 22.

The clear intent of Congress in expanding the jurisdiction of district courts beyond the previous bounds of 15 U.S.C. A. § 15 found expression in the addition of the phrase "not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; * * *." 15 U.S.C.A. § 22. Eastman Kodak Co. v. Southern Photo Material Co., 1927, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684. Such clear Congressional intent is not to be frustrated by any lack of artistry in plaintiff's pleading.

In the Eastman Kodak case, supra, the Supreme Court interpreted the Congressional mandate of 15 U.S.C.A. § 22 as follows:

> "* * * a corporation is engaged in transacting business in a district, within the meaning of this section, in such sense as to establish the venue of a suit—although not present by agents carrying on business of such character and in such manner that it is 'found' therein and is amenable to local process—if in fact, in the ordinary and usual sense, it 'transacts business' therein of any substantial character. * * *

> "We are further of opinion that a corporation is none the less engaged in transacting business in a district, within the meaning of this section—which deals with suits respecting unlawful restraints upon interstate trade—because of the fact that such business may be entirely interstate in character and be transacted by agents who do not reside within the district." Id., 273 U.S. at page 373, 47 S.Ct. at page 403.

The facts of the Eastman Kodak case upon the basis of which the Supreme Court held that the defendant there was "transacting business" within the meaning or the statute in question were stated as follows by the Court:

> "* * * the defendant, in a continuous course of business, was engaged, not only in selling and shipping its goods to dealers within the Georgia district, but also in soliciting orders therein through its salesmen and promoting the demand for its goods through its demonstrators for the purpose of increasing its sales * * *." Id., 273 U.S. at page 374, 47 S.Ct. at page 404.

The standards to be derived from this language are not to be erected as a set of rigid prescriptions of the particular incidents of business conduct which constitute "transacting business". Thus, it may not always be essential to have solicitation by agents in the district, or the maintenance of any particular type of paraphernalia or equipment in the district. In the words of Mr. Justice Frankfurter, "Whether a corporation 'transacts business' in a particular district is a question of fact in its ordinary untechnical meaning. The answer turns on an appraisal of the unique circumstances of a particular situation." See United States v. Scophony Corp., 1948, 333 U.S. 795, concurring opinion, at page 819, 68 S.Ct. 855, at page 867, 92 L.Ed. 1091. While the Supreme Court in the Scophony case was not dealing with manufacturing and selling, it reemphasized that the test of whether a corporation was "transacting business" was meant to substitute "practical, business conceptions for the previous hairsplitting legal technicalities encrusted upon the "found"—"present"—"carrying-on-business" sequence * * *." 333 U.S. 795, at page 808, 68 S.Ct. 855, at page 862.

The facts of the business activity carried on in this district by defendant Inland Steel Company are as follows:

Inland Steel Company has no installations, agents, or supplies of any kind in California. Its sole contact with California is the filling of a number of orders which are sent to it by an independent steel sales firm, the Lawrence-Totten Company, which is not the agent of Inland Steel. There is no contract between Lawrence-Totten and Inland Steel, and no indication of control by Inland Steel over Lawrence-Totten. From time to time, as Lawrence-Totten receives orders for certain kinds of steel products from its customers, it orders them from Inland Steel Company at its Chicago office. (In this connection, although defendant Inland Steel points out that all the usual legal incidents of sale, such as risk of loss, cost of freight, passage of title, are structured to occur or be located in Illinois rather than in California, it may be reiterated that these legal niceties were not intended by Congress to control the jurisdiction of district courts in anti-trust suits. See Scophony, supra, 333 U.S. at page 808, note 19, 68 S.Ct. at page 862. The orders, if accepted by Inland in Chicago, are shipped and billed directly to Lawrence-Totten's customers in California, and Lawrence-Totten is sent a commission for its share of the transaction. The amount of orders thus sent into all of California is not before the Court; the amount of merchandise sent into the Northern District of California, which is the only relevant consideration for the "transacting business" test, is not specified with precision by either party. Plaintiff's affidavits consist largely of speculation and hearsay, and do not in any case aver any specific volume of shipments. Defendant's affidavits disclose that the amount of steel coming into this district is but 9/100th of 1% of the tonnage produced by defendant. No purchaser from Inland, or Lawrence-Totten, received as much as 300 tons of steel during the year 1955. There is nothing magical, of course, in a small percentage figure, even one as small as 9/100th of 1%, if the impact of the business represented by that figure in the district concerned is nevertheless substantial. In Green v. United States Chewing Gum Mfg. Co., 5 Cir., 1955, 224 F.2d 369, the court rejected the implication that the defendant there could not have been "transacting business" because the amounts of the shipments of chewing gum coming into the district was " 'a very small part of the total business of my company' ". Id., 224 F.2d at page 372. The court said:

> "Upon said defendant's admission of two regular customers within the district, and the plaintiff's affidavit that the said defendant delivered within the district approximately six thousand (6,000) pounds of chewing gum per month, and the calculation of such sales in terms of dollars per year at slightly more than $25,000.-00 per annum, it must be held that the deliveries within the district were substantial." Id., 224 F.2d at page 371.

The Green decision, of course, dealt with the chewing gum supply business. Thus, apart from the facts of a continued relationship with regular customers upon which the court there relied in part, it would be less than the exercise of practical business sense to apply to this case the quantitative standards apt for the Green case. The question in each case is substantiality, and the nature of the industry concerned must of necessity enter into the determination of that issue.

Coming to the cases cited by both parties, they are not for the most part sufficiently apposite in their facts to be of much guidance. Defendant argues that the cases of Dazian's, Inc., v. Switzer Bros., D.C.N.D.Ohio 1951, 111 F.Supp. 648 and Reid v. University of Minnesota, D.C.N.D.Ohio 1952, 107 F.Supp. 439, support his position, because in those cases, as in the instant case, the volume of business done by each of the defendants there in the districts in question were infinitesimal when compared to the total volume of the business of the defendants. In the Dazian case, the court said:

"Ohio business comprises only a small part of the total volume of business of the company. The company's customers lists reveal that of approximately ten thousand customers, there are only six in Ohio who have been supplied with the products of the company upon receipt of their mail orders.

"The foregoing compels the conclusion that Fluorescent Fabrics, Inc. does not 'transact business' in this District within the meaning of Section 22." 111 F.Supp. 648, at page 649.

In the Reid case, the court said:

"It appears further from the affidavit that the total net sales in the Northern District of Ohio for the period July 1, 1945, through June 30, 1952, amounted to $6439.14, * *." 107 F.Supp. 439, at page 441.

Regardless of any similarity of percentage calculations, it seems hardly more proper to rely on these cases for guidance in determining whether Inland Steel Company's shipments into this district constitute substantial business than it does to rely on the Green case, supra.

Nor do the other cases cited, with one exception, concern facts closely enough related to the steel supply business to be of much guidance. The exception is the case of Sunbury Wire Rope Mfg. Co. v. United States Steel Corp., D.C.E.D.Pa. 1955, 129 F.Supp. 425. That case held that the shipment of 600,000 dollars worth of steel products into the district, within two years, constituted the transaction of business under 15 U.S.C.A. § 22, even though the contracts of sale, the solicitation of the orders, and all the other legal incidents of the business took place outside the district. Much of the total shipments was delivered to one customer in the district, pursuant to a single contract. The exact amount involved in that shipment is not given, but it would appear to have been a substantial shipment. The Court asked itself whether the sales "would appear to be substantial from the average businessman's point

of view", Id., 129 F.Supp. at page 427, and answered in the affirmative.

Defendant assails the decision in the Sunbury case as patently wrong because of the fact that no other corporate activity than the delivery took place in the district. This criticism assumes that some other incident of business activity than delivery is always and everywhere required before business may be "transacted" within the meaning of the statute. The Supreme Court cases earlier adverted to do not necessarily lead to such a conclusion. It may be that delivery of goods into a district is so extensive and of such an impact upon the district that from a common sense business point of view it may be said that the deliverer is doing business in the district, despite the fact that he carefully frames his contracts and other arrangements to remain outside the district. The question is one of common sense evaluation in each particular case, based on the particular facts of the particular business situation.

Some aid may be derived from a consideration of the purpose which motivated Congress in providing the test of transacting business. In the Scophony case, the Supreme Court commented as follows on the effect of 15 U.S.C.A. § 22:

"A foreign corporation no longer could come to a district, perpetrate there the injuries outlawed, and then, by retreating* or even without retreating to its headquarters defeat or delay the retribution due." 333 U.S. at page 808, 68 S.Ct. at page 862.

The footnote, explaining how a corporation might seek to evade retribution without retreating under the old statute reads as follows:

"I. e., by artful arrangement of agents' authority, or of their comings and goings, or of the geography of minute incidents in contracting. * * *" 333 U.S. at page 808, note 19, 68 S.Ct. at page 862.

The question in this case, therefore, is posed in the light of these considerations, and in the light of the

showing made by the plaintiff in his affidavits and other matters of record. Although the Court may take note of any matters in the record, the burden of showing jurisdiction, after proper challenge, is on the plaintiff. Becker v. Angle, 10 Cir., 1947, 165 F.2d 140. In 1950, same counsel in another civil antitrust suit sought to hold the same defendant on the same statutory ground. Judge Erskine dismissed for lack of venue and jurisdiction on motion of the defendant. Aero Sales v. Columbia Steel Corporation, Civil Action 29419 in this Court, Order of November 29, 1950. Having in mind the insignificant nature of the shipments here involved in the context of the steel industry, and the total lack of other contact between Inland Steel and this district, and looking to the nature of the business activity here involved, this Court cannot say that plaintiff has met his burden of showing that defendant Inland Steel transacts business in this district within the meaning of 15 U.S.C.A. § 22.

The other grounds upon which plaintiff seeks to predicate jurisdiction over defendant Inland Steel relate to the supposed agency of two wholly owned subsidiaries of Inland Steel, Ryerson and Inland Steel *Products*, both of which do business in this district. But no showing whatsoever is made to disturb the recognition of separate identities to which these subsidiaries are entitled under the Cannon case, supra, in the absence of a showing that the subsidiaries are really the agents of the parent. Likewise, it clearly appears that defendant Inland Steel is not "found" in any other district in California, within the meaning of 15 U.S.C.A. § 15. Therefore, it is unnecessary to discuss any consequences under 28 U.S.C. § 1392(a), had such a showing been made, or were defendant Inland Steel "found" in any other district.

The motions of Inland Steel Company to quash purported service of summons and to dismiss for lack of venue and jurisdiction are hereby granted.