**PAPE TELEVISION COMPANY, Inc.,**
**Appellant,**

v.

**ASSOCIATED ARTISTS PRODUCTION**
**CORPORATION and A.A.P., Inc.,**
**Appellees.**

**No. 18054.**

United States Court of Appeals
Fifth Circuit.

April 26, 1960.

---

Willis C. Darby, Jr., Vincent F. Kilborn, Mobile, Ala., for appellant.

C. A. L. Johnstone, Jr., Mobile, Ala., McCorvey, Turner, Johnstone, Adams & May, Mobile, Ala., of counsel, for appellees.

Before HUTCHESON, TUTTLE and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

This appeal is from the dismissal of Appellant's treble damage anti-trust and restraint of trade suit based on Appellee's practice of licensing its film by tying together several "packages" of film. Appellees seek to support the judgment of the trial court on the ground that the complaint failed to allege facts on which relief could be granted, and also on the ground that venue was improperly laid in the Southern District of Alabama and that the service of process on them was void.

Turning first to the venue and service issue, we conclude that in accordance with well established principles as enunciated by this court in Green v. United States Chewing Gum Manufacturing Company, 5 Cir., 224 F.2d 369, the activities of Appellees in personally soliciting the business of Appellant in Alabama, resulting in the making of an offer, followed by the drawing up and signing by Appellant in Alabama of a contract for the licensing at a fee of some $32,000 payable over thirty-five months of several hundred films to be shown over many weeks were sufficient "contacts of the corporation with the

state of forum * * *, in the context of our federal system * * * to require the corporation to defend the particular suit which is brought there * * *", International Shoe Company v. State of Washington Office of Unemployment Compensation and Placement, 326 U.S. 310, 317, 66 S.Ct. 154, 158, 90 L.Ed. 95, even though under earlier concepts these corporations would not have been suable in ordinary litigation in the State of Alabama. Touching on the venue provisions of the anti-trust statute, 15 U.S.C.A. § 22, the Supreme Court said in Eastman Kodak Company v. Southern Photo Materials Company, 273 U.S. 359, 373, 47 S.Ct. 400, 403, 71 L. Ed. 684 "And we think it clear that, as applied to suits against corporations, for injuries sustained by violations of the Anti-Trust Act, its necessary effect was to enlarge the local jurisdiction of the district courts so as to establish the venue of such a suit not only, as theretofore, in a district in which the corporation resides or is 'found', but also in any district in which it 'transacts business'—although neither residing nor 'found' therein".

We conclude therefore that the trial court correctly over-ruled the motions to quash service and dismiss on the ground of improper venue.

We next deal with the sufficiency of the complaint to allege facts on which relief could be granted.

■ Appellant pitched its case on the following allegations, considerably shortened and paraphrased: that defendants had obtained copyrights to a large number (202) of Pop Eye cartoon films and a large number (337) of less desirable Warner films and a substantial number of other less desirable films for television showing; that they have offered to and did enter into a contract with Appellant to license the showing of the 202 Pop Eye films only on condition that Appellant would also take and pay for the 337 Warner films and the rest of the block or package of less desirable films; that Appellant neither wanted nor needed the Warner or other films but was compelled to buy and pay for them in order to get the film it did want; that this course of action by defendants damaged Appellant by requiring it to buy and pay for film it did not want and by denying it the opportunity to bargain for the film it desired without the tie-in of the other film; and that such action amounted to a restraint of trade and commerce. These allegations, they say, adequately stated a cause of action. We agree that this is so.

Appellant relies heavily on the landmark case, United States v. Paramount Pictures, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260 as making "block booking" of the kind here complained of illegal per se under the Sherman Act.[1]

Appellees counter by saying that other elements of conspiracy and attempts to monopolize must exist before the block booking prohibition becomes applicable. They base this contention on the fact that in the Paramount litigation there was present a charge, fully proven, of conspiracy and a charge, fully proven, of domination of the motion picture exhibition field to the extent of some seventy-seven per cent of the industry.

Careful reading of the judgment of the three-judge district court in the Paramount case however, 66 F.Supp. 323, 348 and 70 F.Supp. 53, 63 and 73, makes it clear that the court held, as it stated, 66 F.Supp. 348, "any form of block-booking is illegal by which an exhibitor, in order to obtain a license for one or more films, must accept a license for one or more other films". It is equally clear that the Supreme Court approved this holding. The Court said:

"(5) *Block-Booking.* Block-booking is the practice of licensing,

1. Section 1 of the Sherman Act is as follows: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C.A. § 1.

or offering for license, one feature or group of features on condition that the exhibitor will also license another feature or group of features released by the distributors during a given period. The films are licensed in blocks before they are actually produced. All the defendants, except United Artists, have engaged in the practice. Block-booking prevents competitors from bidding for single features on their individual merits. The District Court held it illegal for that reason and for the reason that it 'adds to the monopoly of a single copyrighted picture that of another copyrighted picture which must be taken and exhibited in order to secure the first.' That enlargement of the monopoly of the copyright was condemned below in reliance on the principle which forbids the owner of a patent to condition its use on the purchase or use of patented or unpatented materials. See Ethyl Gasoline Corporation v. United States, 309 U.S. 436, 459 [60 S.Ct. 618, 626, 84 L.Ed. 852]; Morton Salt Co. v. Suppiger Co., 314 U.S. 488, 491 [62 S.Ct. 402, 404, 86 L.Ed. 363]; Mercoid Corp. v. Mid-Continent Investment Co., 320 U.S. 661, 665 [64 S.Ct. 268, 271, 88 L.Ed. 376]. The court enjoined defendants from performing or entering into any license in which the right to exhibit one feature is conditioned upon the licensee's taking one or more other features. We approve that restriction. * * * We do not suggest that films may not be sold in blocks or groups, when there is no requirement, express or implied, for the purchase of more than one film. All we hold to be illegal is a refusal to license one or more copyrights unless another copyright is accepted." [334 U.S. 131, 68 S.Ct. 928.]

It is perfectly plain that in condemning the block booking practices as illegal the Court did not take into account the fact that other illegal acts charged in the same proceedings involved conspiracies and attempts to monopolize the exhibiting of moving pictures. The trial court and the Supreme Court dealt separately with the many alleged illegal practices. The block booking practice was found to be followed by all but one of the defendants and each of them individually was enjoined from continuing the practice for future. It is thus clear that the court condemned the practice per se.

We conclude that allegation of the existence of the practice here charged stated a cause of action against the defendants. The judgment of dismissal must therefore be set aside.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.