354 F.2d 515
 122 U.S.App.D.C. 383
 Alec C. LEVIN and Oswald E. Roggenkamp, Appellants,
v.
JOINT COMMISSION ON ACCREDITATION OF HOSPITALS, Appellee.
Alec C. LEVIN and Oswald E. Roggenkamp, Appellants,
v.
DOCTORS HOSPITAL, INC., Appellee.
 Nos. 19006, 19007.
 United States Court of Appeals District of Columbia Circuit.
 Argued June 2, 1965.
Decided Dec. 8, 1965, Petition for Rehearing En Banc Denied
Jan. 18, 1966.
 
 Mr. Raymond W. Bergan, Washington, D.C., for appellants. Messrs. Edward Bennett Williams and Vincent J. Fuller, Washington, D.C., were on the brief for appellants.
 Mr. Jerome B. Libin, Washington, D.C., with whom Mr. Mac Asbill, Washington, D.C., was on the brief, for appellee in No. 19,006.
 Mr. G. A. Chadwick, Jr., Washington, D.C., with whom Mr. John C. Duncan, III, Washington, D.C., was on the brief, for appellee in No. 19,007.
 Messrs. Mac Asbill and Jerome B. Libin, Washington, D.C., filed a brief on behalf of Joint Commission on Accreditation of Hospitals, as amicus curiae, urging affirmance in No. 19,006.
 Messrs. Howard Adler, Jr., John V. Voortman and Werner Strupp, Washington, D.C., filed a brief on behalf of American Podiatry Association, as amicus curiae, urging reversal in No. 19,007.
 Before FAHY, WRIGHT, and MCGOWAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 These two appeals arise from a single civil antitrust action brought in the District Court against Doctors Hospital, Inc., a Virginia corporation which operates for gain a hospital in the District of Columbia, and Joint Commission for the Accreditation of Hospitals, an Illinois not-for-profit corporation with its office in Chicago. No. 19006 is an interlocutory appeal, here under the authority of 28 U.S.C. 1292(b). It presents the question of whether, as to Joint Commission, venue was properly laid under Section 12 of the Clayton Act, 15 U.S.C. 22, the District Court having ruled that it was not. No. 19007 seeks reversal of the District Court's grant of summary judgment to Doctors Hospital.
 
 
 2
 Appellants are two individuals who are licensed (2 D.C. Code 701-719) to practice podiatry. For many years they have held courtesy staff privileges at Doctors Hospital which permitted them to perform there, without supervision, surgery of the kind covered by their licenses. The gravamen of the action is that Doctors Hospital and Joint Commission have, by an agreed course of conduct in violation of the antitrust laws, moved to terminate these privileges. It is alleged that the appellees have conspired with each other, and with other non-defendant organizations, to deprive appellants of their professional rights by restricting their access to the facilities of Doctors Hospital. Joint Commission is said to be the principal agency for accomplishing this illegal object, by reason of its functions in examining and accrediting hospitals throughout the country. It is alleged that Doctors Hospital, at the instance of Joint Commission and in order to retain its accredited status, adopted a bylaw which would permit appellants to perform surgery only under the supervision of an attending physician and with full responsibility for and to the patient vested in the latter.
 
 
 3
 Both appellees moved for summary judgment but, before that motion was heard, Joint Commission's claim of improper venue was sustained and service of process upon it quashed. The motion was, as noted above, successfully pressed by Doctors Hospital.
 
 No. 19006
 
 4
 It appears, from an affidavit filed by the director of the Joint Commission, that the central purposes of the Commission are to establish standards for hospital operation, and to conduct an inspection and accreditation program which will secure compliance with those standards. The Commission will, upon request, examine any hospital periodically for the purpose of deciding whether accreditation shall be granted or continued. This examination is done on the spot by field surveyors who report their findings and recommendations to the Commission's office in Chicago where they are reviewed by the administrative staff and acted upon by the Joint Commission's governing board. Over 1600 hospitals throughout the United States are surveyed annually. The number of such surveys in the District of Columbia was 1 in 1961, 5 in 1962, and 7 in 1963. Using estimates of total manhours involved in surveying and reviewing the results, it is said that considerably less than one per cent of the Joint Commission's total activities have taken place in the District of Columbia.
 
 
 5
 This last ratio is relied upon as demonstrating that the Joint Commission does not transact business in the District within the meaning of Section 12. We do not so regard it. This court has lately had occasion to discuss the Congressional purpose underlying Section 12, and the highly practical concept of doing business which it reflects. Semel Associates, Inc. v. United Fireworks Mfg. Co., 123 U.S.App.D.C. , 355 F.2d 827, 19131, decided December 7, 1965. In some circumstances it may well be that the insubstantiality and irregularity of a corporation's contacts with a jurisdiction operate to negate Section 12's applicability, but we do not think this flows automatically from a comparison of the volume of a corporation's activities in one place with its total operations. The former can be an important element in the manifestation and realization of the corporation's purposes, and may, indeed, in combination with many other similarly small operations in different places, account for the very sizeable scope of the corporation's business generally.
 
 
 6
 The business of the Joint Commission is that of accrediting hospitals. Field inspections are an essential aspect of that business. When a field inspector comes to the District of Columbia to inspect a hospital, the Commission is transacting its business there as certainly as when the inspector's report is reviewed and acted upon in Chicago. We doubt that the Commission, as a practical matter, either does, or prefers to, think of itself as not exercising its functions in the District. The number of hospitals in Washington is necessarily small in comparison to those in the country at large, but we do not suppose that this puts them beyond the range of the Commission's professional concern. Semel makes clear that the reach of Section 12 does not depend upon the existence of an office, or property, or permanent personnel, in the District. But when the Commission's field inspectors come here to perform the inspections without which the Commission's work cannot go forward, we think the Commission can be said to be transacting its business here to such a degree as to make it answerable here to claims of antitrust violation.
 
 
 7
 Although the greater part of Joint Commission's argument to us on this matter of venue is directed to showing that its activities here were not of the requisite degree, it also contends that they were not of a kind to bring them within the antitrust laws. We think that this contention is adequately disposed of by reference to this court's two opinions in the so-called AMA cases. United States v. American Medical Ass'n, 72 App.D.C. 12, 110 F.2d 703, cert. denied, 310 U.S. 644, 60 S.Ct. 1096, 84 L.Ed. 1411 (1940); American Medical Ass'n v. United States, 76 U.S.App.D.C. 70, 130 F.2d 233 (1942), aff'd 317 U.S. 519, 63 S.Ct. 326, 87 L.Ed. 434 (1943).
 
 No. 19007
 
 8
 In support of the summary judgment granted to it in the District Court, Doctors Hospital also argues that there is no trade or commerce involved within the meaning of the Sherman Act; and that, even if there be, the restraint alleged is a reasonable one. What we have just said about the AMA cases in No. 19006, supra, applies with equal force here. As to the second point, although the representations made by Doctors Hospital in its affidavits suggest that there may be very substantial questions as to its ultimate liability, we must be mindful of the Supreme Court's strictures upon 'trial by affidavit' in anti-trust litigation, and its admonition that 'summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles * * *.' Poller v. Columbia Broadcasting System, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). It may well be, as Doctors Hospital contends, that appellees' affidavits stand without formal contradiction because of appellants' failure to observe the formal requirements of Rule 56, FED.R.Civ.P. But, standing alone, appellees' affidavits leave some uncertainties as to the fact and extent of agreement, as well as to the parties, purposes and motivations involved, which should not be resolved on this unilateral showing. Doctors Hospital's role, if any, in any consensual conduct which might eventually be established appears to have been, even on the appellants' allegations, a peculiary passive one, dictated perhaps, as it asserts, by the economic and professional necessity of retaining accreditation. But these are all matters upon which opinions and judgments may be more confidently formed after, rather than before, they have been exposed to the therapy of the direct hearing, with its live testimony and cross-examination.
 
 
 9
 The judgments in both No. 19006 and No. 19007 are reversed and the cases remanded for further proceedings not inconsistent herewith.
 
 
 10
 It is so ordered.