**LIPPA & CO., Inc.**

v.

**LENOX INCORPORATED.**

Civ. A. No. 5347.

United States District Court
D. Vermont.

Sept. 2, 1969.

See also D.C., 305 F.Supp. 182.

---

R. Allan Paul, Paul, Frank & Collins, Burlington, Vt., for plaintiff.

Guy M. Page, Yandell & Page, Burlington, Vt., and Andrew C. Hartzell, Jr., Debevoise, Plimpton, Lyons & Gates, New York City, for defendant.

## OPINION

LEDDY, District Judge.

This is a private treble damage antitrust suit by Lippa & Co., Inc., a New York retail jewelry and china dealer against Lenox Incorporated, a manufacturer and distributor of china dinnerware. The action was instituted on September 13, 1968, and service was made on the Vermont Secretary of State in accordance with 12 V.S.A. §§ 855, 856. On October 7, 1968, defendant filed a motion to dismiss on the basis that service by the method attempted was improper. Argument was heard on this motion, and memoranda of law were submitted. While the decision was still

pending, plaintiff served the complaint again by sending it to the United States Marshal in Newark, New Jersey, for service on defendant's general counsel in accordance with Section 12 of the Clayton Act, 15 U.S.C. § 22 (1964). Defendant renewed its motion to dismiss on two grounds. First, under the provisions of section 12 of the Clayton Act there was no venue in this district. Second, the statute of limitations had run. An affidavit of defendant's general counsel was submitted in support of this motion. In accordance with the agreement of the parties, plaintiff was allowed to submit interrogatories to the defendant on the limited question of whether there was venue over the defendant in this district. The answers to these interrogatories together with the facts alleged in the affidavit comprise the factual basis of this decision.

First, I shall treat the question of venue. The affidavit and answers to the interrogatories show the following to be the relevant facts.

Defendant, Lenox Incorporated, produces and sells to retail outlets "fine china dinnerware" under the trade names of Lenox and Oxford Bone China. All sales are made to independent retail dealers F.O.B. Pomona, New Jersey. There are no contracts between Lenox and the retailers it deals with except the individual sales contracts for china shipped to these retailers. Although it does not expressly appear, it can be assumed that all of these contracts are made in New Jersey.

For the years 1964–1968, the following represents the total sales of Lenox china in the district of Vermont:

| YEAR | AMOUNT |
|------|--------|
| 1964 | $ 5,328.00 |
| 1965 | $ 5,270.00 |
| 1966 | $ 8,625.00 |
| 1967 | $10,169.00 |
| 1968 | $15,632.00 |

At the present time, Lenox sells china to nine Vermont retail outlets spread throughout the State. These retail outlets have dealt with Lenox between one and forty-six years. There are no franchise agreements between Lenox and the retailers but retailers are chosen on the basis of a number of criteria: (1) they presently carry a selection of leading sterling, crystal and fine china lines; (2) they have sufficient working capital to carry stock in a representative assortment of china patterns; (3) they have a well trained, full time bridal consultant; (4) they have a constant advertising program aimed at the bridal market; (5) they have an atmosphere conducive to displaying and selecting fine china; (6) they have a well trained and aggressive sales force and (7) they are located close to a principal shopping area. Retailers are solicited by agents of defendant—so-called district managers. All of the retailers are regular customers of Lenox. They order and stock inventory and place additional orders when the inventory is depleted.

Defendant sends district managers into the State of Vermont. The responsibility of the district managers is to sell china to the authorized dealers and to develop their territory by increasing sales to established accounts and by adding new accounts. The district managers have the duty of explaining defendant's price maintenance policy. They also have the duty to advise the dealers on efficient merchandising, inventory control, proper display, technical characteristics of Lenox china, advertising and new additions to the Lenox china line. Orders are taken by district managers and sent to Pomona, New Jersey, for acceptance.

A district manager for Lenox has visited retailers in the State of Vermont at least twice each year since 1964. In 1964, a district manager spent an aggregate of two days in Vermont visiting twice each authorized retailer. In 1968, the Vermont retailers were also visited twice by two separate district managers. The aggregate time spent in Vermont by the district managers was eight days. Although the evidence does not indicate this directly, it can be as-

sumed that in carrying out their job function, the district managers make periodic telephone calls to Vermont and send and receive mail from Vermont retailers.

In addition to the advertising material distributed by the district managers, Lenox sends advertising and promotional material directly to Vermont retailers. Lenox also advertises in national media aimed at the consumer.

The evidence shows no other contacts between the defendant and the State of Vermont except those enumerated above. The defendant owns no real or personal property in Vermont; has no subsidiary in Vermont; maintains no office, place of business, storage or manufacturing facility or inventory in Vermont; has no bank accounts in Vermont; keeps no business or corporate records in Vermont; has no officer or director who is a resident of Vermont; holds no directors' or stockholders' meetings in Vermont; files no tax returns in Vermont; maintains no address in Vermont and does not list its name in any telephone book in Vermont.

The requirements for venue in a private antitrust action are set out in section 12 of the Clayton Act, 15 U.S.C. § 22 (1964):

Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

Defendant does not contend in this case that service of process on its general counsel at its principal place of business in New Jersey was improper. It does contend, however, that venue in this district is improper because it is not an inhabitant of Vermont; it is not found in Vermont; and it does not transact business here. Plaintiff admits that defendant is not an inhabitant of Vermont

and is not found here as those terms are used in the statute. Therefore, the issue is whether defendant transacts business in this district.

Any analysis of the meaning of the term "transacts business" in section 12 of the Clayton Act must start with the case of Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S. Ct. 400, 71 L.Ed. 684 (1927). That case involved a private antitrust suit brought in the Northern District of Georgia. The defendant was a corporation with a principal place of business in New York. It was not registered to do business in Georgia; it had no office, place of business or agent in Georgia. It had, however, for many years carried on a substantial volume of interstate trade with distributors in Georgia. Much of this business was obtained through defendant's salesmen during their periodic visits to Georgia. In addition, defendant sent demonstrators into Georgia to explain and exhibit defendant's products.

In deciding that the defendant transacted business in Georgia, the Court defined a standard:

[A] corporation is engaged in transacting business in a district, within the meaning of this section, in such sense as to establish venue of a suit * * * if in fact, in the ordinary and usual sense, it "transacts business" therein of any substantial character.

Id. at 373, 47 S.Ct. at 403. The Court went on to state that a corporation may "transact business" even if the business is entirely interstate and is carried on through agents who do not reside in the district. According to the Court, the purpose of section 12 of the Clayton Act was:

[to relieve] the injured person from the necessity of resorting for the redress of wrongs committed by a nonresident corporation, to a district, however distant, in which it resides or may be "found"—often an insuperable obstacle—and enabling him to

institute the suit in the district, frequently that of his own residence, in which the corporation in fact transacts business * * *.

Id. at 373–374, 47 S.Ct. at 403.

The construction of section 12 set out in *Eastman Kodak* was further developed in United States v. Scophony Corp., 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948). The Court in *Scophony* described the effect of *Eastman Kodak* in these words:

> The practical, everyday business or commercial concept of doing or carrying on business "of any substantial character" became the test of venue.
>
> *  *  *  *  *  *
>
> A foreign corporation no longer could come to a district, perpetrate there the injuries outlawed, and then by retreating or even without retreating to its headquarters defeat or delay the retribution due.

Id. at 807–808, 68 S.Ct. at 862.

Since the Supreme Court decisions in *Eastman Kodak* and *Scophony*, the issue of whether a particular corporation is transacting business in a district has been determined many times in the lower federal courts. See, e.g., Commonwealth Edison Co. v. Federal Pac. Elec. Co., 208 F.Supp. 936 (N.D.Ill. 1962). No strictly defined test of transacting business has arisen in these cases. However, the cases do call for both a qualitative and a quantitative analysis of the contacts between the district and the corporation over which venue is sought.

In this case, Lenox cannot seriously dispute that the character of its contacts with Vermont is sufficient to lay venue in this district. Lenox carries on a continuous course of dealings with retailers in Vermont in order that as much of its china as possible will reach the consumer without sacrificing its reputation for quality. See Green v. U. S. Chewing Gum Mfg. Co., 224 F.2d 369 (5th Cir. 1955); School Dist. of Philadelphia v. Kurtz Bros., 240 F.Supp. 361 (E.D.Pa. 1965); Lower Colo. River Authority v.

Westinghouse Elec. Corp., 219 F.Supp. 743 (W.D.Tex.1963); Rhode Island Fittings Co. v. Grinnell Corp., 215 F.Supp. 198 (D.R.I.1963). The fact that the sale of china by Lenox to its retail outlets does not occur in Vermont does not detract from the conclusion that it does business here. See B. J. Semel Associates, Inc. v. United Fireworks Mfg. Co., 122 U.S.App.D.C. 402, 355 F.2d 827 (1965). It is sufficient that delivery and the effects of its interstate business occur in Vermont. See Hartley & Parker, Inc. v. Florida Beverage Corp., 307 F.2d 916 (5th Cir. 1962); Brandt v. Renfield Importers, Ltd., 278 F.2d 904 (8th Cir. 1960); Green v. U. S. Chewing Gum Mfg. Co., 224 F.2d 369 (5th Cir. 1955); Austad v. United States Steel Corp., 141 F.Supp. 437 (N.D.Cal.1956); Sunbury Wire Rope Mfg. Co. v. United States Steel Corp., 129 F.Supp. 425 (E. D.Pa.1955); Raul Int'l Corp. v. Nu-Era Gear Corp., 28 F.R.D. 368 (S.D.N.Y. 1961).

In addition to the sale of china to retailers within the district, Lenox sends agents within the district at least twice a year to solicit orders from retailers, to develop new retail outlets and to advise retailers. See Jeffrey-Nichols Motor Co. v. Hupp Motor Car Corp., 46 F.2d 623 (1st Cir. 1931); School Dist. of Philadelphia v. Harper & Row Publishers, Inc., 267 F.Supp. 1006 (E.D.Pa. 1967); Wentling v. Popular Science Publishing Co., 176 F.Supp. 652 (M.D. Pa.1959); Abrams v. Bendix Home Appliances, Inc., 96 F.Supp. 3 (S.D.N.Y. 1951). Lenox also sends advertising circulars and catalogs to Vermont retailers and advertises in national media aimed at the consumer. See Brandt v. Renfield Importers, Ltd., 278 F.2d 904 (8th Cir. 1960); School Dist. of Philadelphia v. Harper & Row Publishers, Inc., 267 F.Supp. 1006 (E.D.Pa.1967).

█ Taking these contacts as a whole it is clear that qualitatively, defendant's sales, solicitation and advertising in Vermont amount to the transaction of business in Vermont. Lenox contends, however, that the test under *Eastman Kodak*

is whether a *substantial amount* of business is transacted within the district. The test is not met, it argues, because the quantity of business done here is insubstantial especially when compared with its gross sales of china.

In the year the cause of action in this case arose—1964—Lenox sold $5,328.00 in china to Vermont retailers. In 1968, the year of the filing of this suit, Lenox sold $15,632.00 in china to Vermont retailers. The national sales of Lenox china in those years were $14,945,000 and $25,800,000, respectively. Therefore, the percentage of Lenox's gross business that is done in Vermont is low: .036 per cent in 1964; .06 per cent in 1968.

While I do agree that a substantial quantity of business must be done in a district before venue lies against a corporation, I do not find the inquiry as sterile as Lenox suggests. If any test is involved, it is that substantiality is to be treated from the average businessman's point of view. See B. J. Semel Associates, Inc. v. United Fireworks Mfg. Co., 122 U.S.App.D.C. 402, 355 F.2d 827 (1965); Green v. U. S. Chewing Gum Mfg. Co., 224 F.2d 369 (5th Cir. 1955); United States v. Burlington Indus., Inc., 247 F.Supp. 185 (S.D.N.Y. 1965). Numerous factors may enter into such a test. See B. J. Semel Associates, Inc. v. United Fireworks Mfg. Co., 122 U.S.App.D.C. 402, 355 F.2d 827, 832n.8 (1965).

Lenox has attached overriding significance to one factor, the percentage that sales in this district bear to its gross national sales. The cases that have considered this factor, however, have given it negligible weight. See Levin v. Joint Comm'n on Accreditation of Hosps., 122 U.S.App.D.C. 383, 354 F.2d 515 (1965); Brandt v. Renfield Importers, Ltd., 278 F.2d 904 (8th Cir. 1960); Green v. U. S. Chewing Gum Mfg. Co., 224 F.2d 369 (5th Cir. 1955); Lower Colo. River Authority v. Westinghouse Elec. Corp., 219 F.Supp. 743 (W.D.Tex.1963); Wentling v. Popular Science Publishing Co., 176 F.Supp. 652 (M.D.Pa.1959); Sunbury

Wire Rope Mfg. Co. v. United States Steel Corp., 129 F.Supp. 425 (E.D.Pa. 1955). The problem in giving this factor too much weight has been well stated in Green v. U. S. Chewing Gum Mfg. Co., 224 F.2d 369 (5th Cir. 1955):

> [I]f that were the rule, we would have different tests of substantiality applying to different corporations according to their size; a large corporation could, with impunity, engage in the same acts which would subject a smaller corporation to jurisdiction and venue.

Id. at 372. The problem has also been stated another way in Levin v. Joint Comm'n on Accreditation of Hosps., 122 U.S.App.D.C. 383, 354 F.2d 515 (1965):

> In some circumstances it may well be that the insubstantiality and irregularity of a corporation's contacts with a jurisdiction operate to negate Section 12's applicability, but we do not think this flows automatically from a comparison of the volume of a corporation's activities in one place with its total operations. The former can be an important element in the manifestation and realization of the corporation's purposes, and may, indeed, in combination with many other similarly small operations in different places, account for the very sizeable scope of the corporation's business generally.

Id. at 517.

A better approach is to consider the dollar volume of business done in the light of the objectives of the corporation and the effect of the business within the district. See School Dist. of Philadelphia v. Kurtz Bros., 240 F.Supp. 361 (E.D.Pa.1965). In such an approach, the quality of a corporation's contacts, as discussed above, is a major factor. Therefore, characteristics such as continuity, solicitation and advertising must be considered in looking at any sales figures within the district. See B. J. Semel Associates, Inc. v. United Fireworks Mfg. Co., 122 U.S.App. D.C. 402, 355 F.2d 827 (1965); Levin

v. Joint Comm'n on Accreditation of Hosps., 122 U.S.App.D.C. 383, 354 F.2d 515 (1965); School Dist. of Philadelphia v. Kurtz Bros., 240 F.Supp. 361 (E.D.Pa.1965); Rhode Island Fittings Co. v. Grinnell Corp., 215 F.Supp. 198 (D.R.I.1963); Donlan v. Carvel, 193 F.Supp. 246 (D.Md.1961).

There is also another factor to be considered. Vermont is a very small district. Its population according to the 1960 census is only 390,000 people. The gross sales in Vermont of a corporation engaging in production and sale of consumer products are necessarily small. Similarly, the percentage that Vermont business bears to the overall business must be small when compared to other states or judicial districts. Moreover, Vermont has no large urban areas, its population is spread—more or less—throughout the State. Thus, the wholesale and retail outlets throughout the state are necessarily small and scattered.

█ It is the small size and population distribution of the state that ultimately makes the defendant's arguments possible in this case. In fact, the logical extension of the defendant's argument is that no large national corporation could ever be sued in Vermont under the antitrust laws regardless of the efforts of that corporation to capture a large share of the Vermont market. Such a result runs directly contrary to the purposes of section 12 of the Clayton Act as stated in *Scophony*:

> A foreign corporation no longer could come to a district, perpetrate there the injuries outlawed, and then by retreating or even without retreating to its headquarters defeat or delay the retribution due.

333 U.S. at 808, 68 S.Ct. at 862. I find nothing in section 12 or in *Scophony* to suggest that persons and corporations in Vermont should be deprived of the opportunity to bring suit in Vermont against foreign corporations who actively and enthusiastically engage in the Vermont market simply because the size of the state makes that corporation's gross and percentage sales figures appear small when compared to other districts.

█ The amount of business transacted by Lenox in this district was $15,632.00 in 1968. A number of cases have found gross sales figures of the same order of magnitude to be substantial when coupled with other factors. See Pape Television Co. v. Associated Artists Prod. Corp., 277 F.2d 750 (5th Cir. 1960); Green v. U. S. Chewing Gum Mfg. Co., 224 F.2d 369 (5th Cir. 1955); School Dist. of Philadelphia v. Harper & Row Publishers, Inc., 267 F.Supp. 1006 (E.D.Pa.1967); United States v. Burlington Indus., Inc., 247 F.Supp. 185 (S.D.N.Y.1965); School Dist. of Philadelphia v. Kurtz Bros., 240 F.Supp. 361 (E.D.Pa.1965); Lower Colo. River Authority v. Westinghouse Elec. Corp., 219 F.Supp. 743 (W.D.Tex.1963). In view of the continuity of Lenox's relationship with its dealers, the solicitation and advertising and the size of the district, I find that Lenox has transacted a substantial quantity of business in Vermont from 1964 to the present. Therefore, the motion to dismiss on the grounds of improper venue is denied.

The second ground asserted for dismissal of the action is the statute of limitations. It is undisputed that the complaint in this action was filed within the limitation period. Defendant, however, asserts two grounds for dismissal: (1) service of process was effectuated outside the limitation period; (2) this action was made into an antitrust suit by an amendment to the complaint that occurred outside the limitation period.

█ The first ground is clearly without merit. Under Federal Rule of Civil Procedure 3, a civil action is commenced by the filing of the complaint. The authorities are clear, at least in a case depending on Federal law, that commencement of an action according to Rule 3 tolls the statute of limitations irrespective of the time of service. See Moore Co. of Sikeston, Mo. v. Sid Richardson Carbon & Gasoline Co., 347 F.2d 921 (8th Cir. 1965).

182

There is no factual basis for the second ground. The complaint as originally drafted alleged in paragraph 4 that the defendant had entered "into an unlawful combination and conspiracy * * * in restraint of trade * * *." Thus, the complaint as originally drafted alleged a violation of the antitrust laws. The amendment, filed subsequently, fortified this allegation but certainly did not create it.