Harry BRANDT, d/b/a University City House of Liquors, et al., Appellants,

v.

RENFIELD IMPORTERS, LTD., a Corporation, et al., Appellees.

No. 16359.

United States Court of Appeals
Eighth Circuit.

April 27, 1960.

Rehearing Denied July 25, 1960.

J. L. London, St. Louis, Mo., for appellants.

Richmond C. Coburn, St. Louis, Mo., for appellee, Renfield Importers, Ltd.

Donald J. Meyer and Lewis C. Green, St. Louis, Mo., for appellee Julius Wile Sons & Co., Inc.

R. Walston Chubb, St. Louis, Mo., and Earl E. Pollock, Chicago, Ill., for appellee James B. Beam Distilling Co.

Before GARDNER, WOODROUGH, and BLACKMUN, Circuit Judges.

WOODROUGH, Circuit Judge.

This action was brought by eighteen retail liquor dealers doing business in St.

Louis, Missouri, and vicinity, against fourteen distillers, distributors, wholesalers, and retailers of liquor for injunction and treble damages for alleged violations of the Sherman Act, 15 U.S.C.A. § 1 et seq., the Clayton Act, 15 U.S.C.A. § 12 et seq., and the Robinson-Patman Act, 15 U.S.C.A. §§ 13, 13a, 13b, 21a.

The complaint alleged that the defendants created a monopoly in the retail liquor business in violation of the antitrust laws; that they had conspired to monopolize and have monopolized the trade and commerce in said liquor and the retail distribution thereof in St. Louis, Missouri, and vicinity.

The case was heretofore before this Court on an appeal by the plaintiffs from three orders entered by the District Court on November 20, 1958, which severally dismissed the case as to three defendant corporations, Renfield Importers, Ltd. (referred to as Renfield), James B. Beam Distilling Company (referred to as Beam), and Julius Wile Sons and Company (referred to as Wile), for improper venue and lack of jurisdiction over the person.

The plaintiffs contended on that appeal that the three defendants were "transacting business" in the Missouri judicial district where the suit was brought so that the venue was proper and as they were properly served at their principal places of business, the jurisdiction of the persons was complete. The three orders then appealed from each contained a provision and direction for the entry of a final judgment of dismissal of one of the three defendants in accordance with Rule 54(b) of the Federal Rules of Civil Procedure 28 U.S.C.A. This Court was of the view that the action as disclosed by the complaint did not involve multiple claims within the purview of the Rule but rather a single claim of conspiracy joined in by all defendants and that the orders dismissing the three defendants were not final orders and therefore not appealable. It accordingly dismissed the appeal without consideration of the merits of appellants' contentions and re-

manded the case for further proceedings, 8 Cir., 269 F.2d 14.

After the mandate of this court was entered in the District Court and on August 6, 1959, the plaintiffs entered voluntary nonsuit as to all the defendants in the case excepting Renfield, Beam, and Wile, and with approval of the Court, dismissals without prejudice were entered as to all defendants except the three. On the same day the Court in finally disposing of the action as to the remaining three defendants entered an order in which it referred to the mandate of this Court and to the three orders of dismissal which it had entered on November 20, 1958 in favor of the three defendants and after ordering that those former orders be amended so that the provision and direction based on Rule 54(b) which it had included in those orders be stricken from them, ordered "the aforesaid orders and each of them in all other respects to remain in full force and effect as heretofore entered."

The plaintiffs have taken this appeal from that order of August 6 to obtain reversal of the dismissals of the case as to the three defendants and they contend that the Court erred in sustaining said defendants' respective motions to quash service of process and to dismiss the three defendants for improper venue and lack of jurisdiction of the person. They insist that each of the three defendants is transacting business in the Eastern Judicial District of Missouri within the meaning of 15 U.S.C.A. § 22 (§ 12 of the Clayton Act) and that venue is proper as to each and service at their respective places of business outside of Missouri where they were "found" was sufficient.

The appellee Beam has filed a motion to dismiss this appeal on the ground that the order appealed from is not a final order but we do not find the motion to be meritorious. Although the order of the District Court of August 6, 1959 does not repeat the express words of dismissal that were contained in its previous three orders of November 20, the reference the Court made to those orders and the declaration that the or-

ders and each of them (as amended) were "to remain in full force and effect as heretofore entered" left no ambiguity or uncertainty about the Court's final decision and judgment that the three defendants were not transacting business in the Missouri judicial district and that the case against them was dismissed for that reason. The entry of the order of August 6th afforded the plaintiffs their first opportunity to take a valid appeal from the ruling and order of the District Court dismissing the three defendants and they promptly filed Notice of Appeal. The Notice describes the orders referred to therein which are continued in effect thereby and clearly identifies the proceedings and judgment which the appellants claim to be erroneous. It establishes this Court's jurisdiction to review the dismissals.

■ The only question of merit in this appeal is whether the District Court erred in holding that the Renfield, Beam, and Wile corporations were not "transacting business" in the Missouri judicial district within the intendment of § 12 of the Clayton Act, 15 U.S.C.A. § 22. That section provides:

> "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

The District Court in its opinion (unreported) briefly related the facts relative to the issue as they had been proved without dispute by affidavits of the officers and employees of the three defendants and counsel for appellants have not departed from but have somewhat amplified the Court's statement of facts in accord with the evidence and without dispute.

All three of the appellees are "foreign corporations" as to Missouri, the principal offices of Renfield and Wile being in New York, N. Y. and that of Beam being in Chicago, Ill. Each of them was served with process at its principal office. Each of them had an outstate liquor license for and issued to it by the Supervisor of Liquor Control of Missouri pursuant to § 311.060, subd. 5. The cost of the licenses is $250.00 annually. § 311.180, subd. 1(6).

*As to the Beam Company.* Its selling operations are centered at its main office in Chicago and it has no branch office of any kind in Missouri. It has selected and sells and ships its products to only two licensed distributors in the Missouri district, namely Conrad, Inc., and Manhattan Distributing Co., both of St. Louis, in neither of which does it have any financial interest. It receives its orders for Beam liquors from those distributors at its Chicago office and rejects them or accepts them and makes all deliveries against those accepted by delivering to carriers at its distillery or rectifying plant at Clarmont, Kentucky, f. o. b. that plant, thereby passing title to the goods in Kentucky. It has no stock of merchandise in warehouses or otherwise in Missouri, and no real or personal property there. It maintains a checking account in a St. Louis bank and has there pledged collateral for a loan. Deposits and checks to and from the account are sent from Chicago, where all advertising also is planned and prepared. Beam employs a detail man on a straight salary who resides in the district but has no office or company automobile or Beam stationery with his name on it, but visits retailer-customers of the distributors not on any regular schedule and without any incentive compensation based on sales. He carries no order blanks, has no authority to make sales, or to make adjustments, collections, or credits, and his sole function is promotional in nature, namely, to stimulate interest in Beam's products and to persuade retailers handling Beam's products to give them proper shelf space and display. He has no stock of samples or inventory. He is occasionally requested to make notations of retailer's requisitions for Beam products

and relays such requests to Beam's two distributors. Beam's vice president, Mr. Gertz, supervises the sale of Beam's products to distributors in thirteen states—calling on the distributors at irregular intervals—averaging once every other month on those in Missouri—not for the purpose of taking orders but if given an order by a distributor he transmits it to Beam's office at Chicago for acceptance and processing. Beam is not qualified under the general corporation statute to do business in Missouri as a foreign corporation and has not designated an agent for service of process there. No officer, agent, employee, or director of Beam maintains an office in the district and no officer or director resides therein and no stockholders' or directors' meeting has ever been held there. In 1957 Beam sold $446,000.00 worth of its products to its distributors in the Missouri district of suit, which was 0.7% of all Beam's sales in that year.

*As to Renfield.* In 1956 Renfield Importers, Ltd., sold $1,580,818.60 worth of goods to its distributors in the district of suit. In 1957, it sold $1,313,947.98 worth of its products in this district, all of which was to the two wholesalers in the district, namely, Conrad Inc., and Paramount Liquor Company, Inc., who were Renfield's distributors.

During 1956, two percent of its total volume was done in St. Louis and St. Louis County. In 1957, 1.72 percent of its case total sales were shipped into the City and County of St. Louis.

Jack S. Birnbaum, vice president of Renfield, in his affidavit filed on behalf of said defendant, states that Renfield is incorporated under the laws of New York. It has never been qualified to do business in Missouri. It is engaged in the business of distributing various kinds of alcoholic beverages throughout the United States. The sale of its products is conducted through its general office in New York City and regional offices in Chicago, San Francisco, Atlanta, and Los Angeles. Renfield sells its products to wholesalers, state liquor control commissions, and to airlines, railroad, and other common carriers. It has no office, warehouse, plant, distillery, or any kind of business operation or any place for any kind of business operation within the State of Missouri. It does not maintain any inventory or stock of goods in this district, owns no property of any kind in Missouri; has no bank account, no transfer agent, registrar or registered agent for service of process in Missouri, has not designated anyone to act for it in Missouri. It is not listed in any telephone directory in Missouri, its name does not appear upon the door of any office or directory of any building in Missouri. *It maintains no salesman, agent, or employee of any kind in Missouri.* It sells its products exclusively to two wholesalers doing business in the district, to-wit, Conrad, Inc., and Paramount Liquor Company, Inc. Renfield has no financial interest in and exercises no control over the operations of any of said wholesalers. Title to products shipped to the wholesalers passes before delivery to Missouri.

Renfield's products are sold to its distributors in Missouri pursuant to customers' orders forwarded by the wholesalers to Renfield's Chicago office which in turn transmits them to the New York office where they are received and accepted, or forwarded by the wholesaler directly to the New York office.

Renfield's products sold pursuant to such orders are sold and shipped exclusively f. o. b. its warehouse, or foreign port of the distillery where the products are made or distilled, all of which are located outside of Missouri.

Renfield employs a Division Manager who operates out of its regional office in Chicago and is engaged in good-will promotional activities in Minnesota, Indiana, North Dakota, South Dakota, Nebraska, Kansas, and formerly in Missouri, but neither such Division Manager nor any other employee has come into the Eastern District of Missouri or conducted any business activities there for about five years prior to the commencement of this action.

It has a Missouri Outstate Liquor Solicitor's License issued by the State of Missouri, which authorizes it to sell its products only to wholesalers, and not to retailers within the State of Missouri.

The executive offices are located in New York, N. Y., and stockholders' and directors' meetings are held there. The corporate books and records are kept there. The company maintains warehouse stocks of its products in New York City, Chicago, San Francisco, and Los Angeles.

*As to Wile.* Julius Wile Sons & Co., Inc., did $142,000.00 in sales in this district in 1957. The principal office of the Julius Wile Company is in New York; its other place of business is a plant in New Jersey. It sells to only two dealers in Missouri. All of the Julius Wile liquors which go to retailers in the Eastern District of Missouri are distributed by Pioneer Liquor Company, Inc. There are two ways these distillers sell to their wholesalers. In one the distiller pays the tax and sells at the price plus the federal tax. The other is to sell in bond, just pay for the products, and then when they get the product out of bond, they pay the government tax directly.

The sales are made f. o. b. New York and New Jersey. The Julius Wile Co. employs Richard D. Ruane, who resides in St. Louis County, to promote good will, and consumer and customer acceptance of Julius Wile's products in Missouri, Kentucky, Kansas, and part of Illinois. Pioneer distributes Wile's products in the Eastern District of Missouri and Central States distributes Wile's products in the Western District of Missouri. All sales of Wile's products to retailers and others in the State of Missouri are made either by Pioneer or by Central States. All orders by Pioneer or by Central States for Wile's products intended for re-sale in Missouri are forwarded to Julius Wile's offices at New York, either directly or through Ruane, by mail, telephone, or telegraph; the products so ordered are shipped to the respective places of business of Pioneer or Central States in the State of Missouri, as the case may be, f. o. b. New York, New Jersey, or foreign port. Pioneer and Central States are billed for all such products by, and make payment directly to, Julius Wile in New York by mail.

Ruane's duties in the district of suit are to maintain contact with Pioneer and Central States, to suggest methods of promoting good will toward, and consumer and customer acceptance of Wile's products. He does not carry order blanks. He as no authority to make or modify any contract with any wholesaler, distributor, retailer, person, firm, or corporation in the Eastern District of Missouri; he does not approve credits, nor make collections from Pioneer or Central States nor any customer of Pioneer or Central States.

In 1957, approximately $1\frac{1}{2}\%$ of Wile's products were sold by Pioneer in the Eastern District of Missouri. Wile maintains no stock of goods or inventory in Missouri, does not own or rent any property in Missouri. Ruane is the only employee of Wile in Missouri. He does not maintain an office or place of business in connection with his employment by Wile: Wile is not listed in any telephone book, nor on any door or building directory; Ruane is not listed; his salary and expense account are paid by check issued in New York and mailed to him in Missouri; he is required to make periodic visits throughout his territory in Missouri, Kentucky, Kansas, and part of Illinois. He does not spend more than fifty percent of his working time in connection with his duties in the Eastern District of Missouri.

Richard L. Blum, Jr., as President and Director, made an affidavit on behalf of Julius Wile Sons & Co., Inc., stating Wile is incorporated under the laws of New York, has never qualified to do business in Missouri; that Wile is duly licensed under § 311.180, subd. 1(6) of the Revised Statutes of Missouri, 1949, V.A.M.S., as an out-of-state corporation to offer intoxicating liquors for sale only to or through duly licensed wholesalers in the State of Missouri. The company makes no retail sales in this district.

The company has no interest in either Pioneer or Central States.

The sales Wile made to distributors in the district in 1957 amounted to $142,-000.

All of the enumerated details of transacting business that the appellees do not engage in in Missouri are stressed by them to support their contention that they do not transact any substantial business in the district. The record clearly indicates, however, that in supplying their liquor to the district of suit they do not offend in any respect the requirements of the Missouri Liquor Control Law, R.S.Mo.1949 Ch. 311, V.A.M.S. The appellants do not claim that the appellees have "agents" in Missouri directly carrying on the sale of appellees' products but their claim is that when appellees' business of selecting certain distributors in the district of suit and of selling their brands of liquor and causing them to be transported into the district to those distributors for distribution there "is judged in its totality" it must be concluded that they each do transact some substantial business in the district of suit. Exhibitor's Service v. Abbey Rents, D.C., 135 F.Supp. 112. They contend that each of the appellees is transacting business in the district in such a sense as to establish the venue of the suit there although not present by agents carrying on business in such character and in such manner that each appellee is found therein, or is there amenable to local process—because each in fact in the ordinary and usual business or commercial sense transacts business there of substantial character. Eastman Kodak Co. v. Southern Photo Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684. Appellants refer to the declaration of the Supreme Court concerning venue in antitrust cases in United States v. Scophony Corporation, 333 U.S. 795, 68 S.Ct. 855, 862, 92 L.Ed. 1091, that "the practical, everyday business or commercial concept of doing or carrying on business 'of any substantial character' became the test of venue" and insist that the business of appellees fully meets that test. As particulars in which the business of appellees meets the test, the appellants point to (1) appellees' taking out licenses in the state and acting under them by selecting and dealing with certain wholesalers in the district as their exclusive vendees and distributors there and planning and providing advertising for solicitation of sales by and through them; (2) by maintaining their close, continuous, day-to-day business relations with their distributors, they in practical concept are transacting liquor business in the district; (3) the volume of the business of each appellee in the district is substantial.

(1) The Missouri Liquor Control Law prescribes the taking out of a license as a prerequisite to selling or offering for sale liquor in the state (§ 311.050) and the

> "issuance of licenses to nonresidents of Missouri or foreign corporations for the privilege of selling to duly licensed wholesalers and soliciting orders for the sale of intoxicating liquors, to, by or through a duly licensed wholesaler, within this state"

of Missouri is expressly sanctioned by § 311.060, subd. 1. § 311.180, subd. 1(6) provides that:

> "No * * * corporation shall * * * sell or offer for sale intoxicating liquor within this state * * * or solicit orders for the sale of intoxicating liquor within this state without procuring a license from the supervisor of liquor control authorizing them so to do. For such license there shall be paid to and collected by the director of revenue annual charges as follows: * * * (6) For the privilege of selling to duly licensed wholesalers and soliciting orders for the sale of intoxicating liquors of all kinds, to, by or through a duly licensed wholesaler within this state, the sum of two hundred and fifty dollars."

Penalties are provided for violations by § 311.880.

A main object of Missouri's Liquor Control Law is the regulation of the peculiar traffic in the state and the issuance of licenses to the several classes of liquor dealers that take part in it is an important means to that end. The taking out of liquor licenses by appellees identifies them with the traffic in the state and subjects them pro tanto to the state's regulation. The requirement that they report all the sales they are making to and through their distributors in the district establishes direct and continuing transactions with the state officers as an integral part of their business operation. It certainly was not any matter of mere form or ceremony. On the contrary, it constitutes a transacting of business of far reaching importance related to all sales of their brands of liquor made for distribution in the district.

(2) Of course, it is not to be considered in isolation. As a closely related matter, appellees have each selected two licensed Missouri wholesale liquor dealers to distribute all of the liquor of their brands that is shipped into the district. The liquor control law prohibits the foreign corporations from setting up places of business and selling within the state. But it is not the object of the law to exclude appellees' brands, only to stringently regulate the traffic. When the foreign corporation makes its selection of only one or two wholesaler dealers to be identified with its brands and to handle all its products in the district, perhaps for long periods of time, that also is a serious business transaction. The record does not include the contracts between appellees and their distributors, but it is evident that the relationships are close, intimate, and of long standing, and cover by expression or implication much more than mere isolated bargains of sale of such and such liquor at such and such a price. Beam sends its vice president and Wile sends an employee into the district to maintain personal good will contacts with the distributors, but Renfield has such relations with its distributors to which its sales amounted to $1,580,-818.10 in 1956 and $1,313,947.98 in 1957

that it does not need to and does not send any employee into the district to call upon them.

Appellees stress that their distributors are independent contractors and such they may appear to be in the technical common law sense. But they are not independent like a casual customer would be who occasionally makes a purchase from a vendor. On the contrary, they are selected sole and exclusive distributors who apparently perform for the appellees every function of distributing appellees' products that agents hired and paid for the purpose could accomplish.

Although appellees have not presented the contracts covering their relations with their distributors, it is not to be assumed that exclusive distributorships which include the opportunity to sell in the important market of St. Louis and vicinity such great amounts of standard, nationally advertised goods as those here involved are entered into without some obligation express or implied. Appellees show that their distributors perform their functions in order to earn a margin of profit between costs and sales instead of wages, but there is no indication that appellees are not free to select other distributors in place of the present ones if they are so minded. We think that in every day business conception the district of suit served with appellees' products as it is, would be sharply contrasted with a district where appellees' products were not for sale or obtainable and where appellees transacted no business. The relations of the appellees with their distributors is too close and continuous for all the transacting of the business to be attributed in common understanding to the distributors and none to the appellees.

Again, advertising according to plan is a most important factor in the nationwide sales of the many millions of dollars worth of their products annually by appellees. They plan and supply the advertising in the district of the suit pursuant to the express provisions of their license from the state. It constitutes a costly and serious transacting of business and affects the sales so directly that it cannot

be disregarded in judging whether in the totality of their operations the appellees transact business in the district.

(3) The large amounts of the sales made in 1957, $1,313,947.98 by Renfield, $446,000.00 by Beam, and $142,000.00 by Wile demonstrate that the business transacted was very substantial. That the sales constituted a very small fraction of the business carried on in all the districts throughout the country by each of the three appellees (1.72% as to Renfield, 0.7% as to Beam, and 1.5% as to Wile) is immaterial. Green v. U. S. Chewing Gum Mfg. Co., 5 Cir., 224 F.2d 369, Sunbury Wire Rope Mfg. Co. v. United States Steel Corporation, D.C.E.D.Pa. 129 F. Supp. 425. But the amounts sold reflect the systematic, continuous carrying on of the business and the continuity of conduct and relationship between the suppliers of the goods and the distributors of them indicates cooperation and participation of both in transacting business in the area.

The appellees describe their nation-wide sales as made to wholesalers and distributors in the different states and press the doctrine of independent contractor to the point that it might be concluded that they do not transact business in any state except at their home offices. But we think that position is contrary to the teaching of Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684; Santa Cruz Fruit Packing Co. v. Labor Board, 303 U.S. 453, 58 S.Ct. 656, 82 L.Ed. 954; Green v. U. S. Chewing Gum Mfg. Co., 5 Cir., 224 F.2d 369, Sunbury Wire Rope Mfg. Co. v. United States Steel Corporation, D.C., 129 F.Supp. 425, United States v. Scophony Corporation, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091, Exhibitors Service Inc. v. Abbey Rents, D.C., 135 F. Supp. 112, Naifeh v. Ronson Art Metal Works, D.C., 111 F.Supp. 491, Jeffrey-Nichols Motor Co. v. Hupp Motor Corp., 1 Cir., 46 F.2d 623, Abrams v. Bendix Home Appliances, D.C., 96 F.Supp. 3, Austad v. United States Steel Corporation, 141 F.Supp. 437, Yonce v. Miners Me-

morial Hospital Association, D.C., 161 F. Supp. 178.

No point has been made concerning the service of process that was had upon the appellees if they were in fact transacting substantial business in the district of suit. The service was in the districts where they were inhabitants and were found. § 12 of the Clayton Act, 15 U.S. C.A. § 22.

The appellees have cited the following as illustrative cases in which a corporation's activities in a district were found not to constitute "transacting business": Winkler-Koch Engineering Co. v. Universal Oil Products Co., D.C. 70 F.Supp. 77; Lechler Laboratories v. Duart Mfg. Co., D.C., 35 F.Supp. 839; Schiller v. Mit-Clip Co., Inc., 2 Cir., 180 F.2d 654; Midwest Fur Producers Ass'n v. Mutation Mink Breeders Ass'n, D.C., 102 F.Supp. 649; Seaboard Terminals Corp. v. Standard Oil Co. of N. J., 2 Cir., 104 F.2d 659; Reid v. University of Minnesota, D.C., 107 F.Supp. 439; Austad v. United States Steel Corp., D.C., 141 F.Supp. 437; Hampton Theatres, Inc. v. Paramount Film Distributing Corp., D.C., 90 F.Supp. 645; Windsor Theatre Co. v. Loew's Incorporated, D.C., 79 F.Supp. 871; Commonwealth Amusement Enterprises, Inc. v. Colonial Theatres Co., Inc., D.C., 79 F. Supp. 763.

None of these cited cases appear to give substantial support to the position of appellees. In the case of Austad v. United States Steel Corporation, supra, the Court commented [141 F.Supp. 442]:

"Some aid may be derived from a consideration of the purpose which motivated Congress in providing the test of transacting business. In the Scophony case, the Supreme Court commented as follows on the effect of 15 U.S.C.A. § 22: 'A foreign corporation no longer could come to a district, perpetrate there the injuries outlawed, and then, by retreating or even without retreating to its headquarters defeat or delay the retribution due.' 333 U.S. at page 808, 68 S.Ct. at page 862."

912

In this case, the working arrangements between the licensed appellees and the licensed distributors they have selected to handle their liquor in St. Louis and vicinity is such that if so disposed they would have as good opportunity to "perpetrate the injuries outlawed" as if they had agents working for them in the area. The case therefore presents the situation the Supreme Court referred to in the Scophony case where the venue for suit against such foreign corporations is in the district where it is charged they have violated the Act.

The judgments of dismissal appealed from are reversed and the case remanded for further proceedings in accord with this opinion.

Reversed.