**COMMONWEALTH EDISON COMPANY, Commonwealth Edison Company of Indiana, Inc., Central Illinois Electric and Gas Co., Northern Indiana Public Service Company and Public Service Company of Indiana, Inc., Plaintiffs,**

v.

**FEDERAL PACIFIC ELECTRIC COMPANY, General Electric Company, I-T-E Circuit Breaker Company, Joslyn Mfg. and Supply Co., H. K. Porter Company, Inc., Schwager-Wood Corporation, Southern States Equipment Corporation and Westinghouse Electric Corporation, Defendants.**

No. 61 C 1285.

United States District Court
N. D. Illinois, E. D.

May 11, 1962.

Charles A. Bane, Robert W. Bergstrom, Seymour F. Simon, Thomas C. McConnell, Lee A. Freeman, William J. Froelich, Chicago, Ill., Van B. Wake, Milwaukee, Wis., Daniel P. Ward, State's Attorney of Cook County, Illinois, Barnabas F. Sears, James O. Smith, Chicago, Ill., for plaintiff.

John T. Chadwell, Hammond E. Chaffetz, Holmes Baldridge, Edward R. Johnston, W. Donald McSweeney, John Paul Stevens, Earl E. Pollock, Robert C. Keck, Roland D. Whitman, Timothy G. Lowry, Harold T. Halfpenny, Lloyd M. McBride, Neil McKay, Jacob H. Martin, Edward R. Adams, Brainerd Chapman, Chicago, Ill., for defendants.

ROBSON, District Judge.

Schwager-Wood Corporation,[1] one of eight defendants in this two-count treble damage antitrust cause, has moved to quash the return of service on it and to dismiss the cause,[2] on the ground it is not subject to service in this District. It is an Oregon corporation, and assertedly transacted no business here and maintained no office in the District.

The affidavit of A. C. Schwager, its president, states the corporation was or-

---

1. This Court has treated the two Schwager corporations as a continuing entity in this discussion.

2. The cause was filed July 31, 1961, and alleges a conspiracy, concerning power switching equipment, existing from Janu-

ary 1, 1948, to sometime in 1960, to allocate business and fix prices. The defendants had been charged in a criminal proceeding to which Schwager Corporation pled *nolo contendere*, and on which plea judgment of guilt was entered on February 6, 1961.

ganized in Oregon, April 9, 1946, and dissolved November 6, 1959. Its successor corporation is Schwager-Wood Company, Inc. Service was had on William Maxwell Wood, vice president and secretary, on August 9, 1961, in Portland, Oregon.

The affidavit further states that:

"Schwager-Wood Corporation at all times has maintained its offices and manufacturing facilities only in Portland, Oregon, and at no time has had any such offices or facilities in the State of Illinois.

"Schwager-Wood Corporation has not ever been registered to do business in Illinois and has never sought or been obliged to so register. It has not done or transacted business in Illinois, has not ever based any of its employees, in Illinois and has not ever authorized any person in Illinois to accept service on its behalf. It has not ever had any subsidiary or controlled corporation in Illinois or elsewhere. It has not ever had any employees who periodically or regularly called on customers or prospected in Illinois.

"Schwager-Wood Corporation has not ever sold anything in the State of Illinois * * *."

"Schwager-Wood Corporation has never been controlled by or in any way affiliated with any corporation engaged in the manufacture of any electrical products.

"Schwager-Wood Corporation at all times was a distinctly 'small business.' Its entire operations were conducted in and from leased premises consisting of an old one-story building * * *. It never employed more than approximately 50 to 60 people, including all executive, engineering, sales and production personnel. In 1958 the last full calendar year of its existence, its gross billings for all products totaled $2,321,077; its total sales of 'power switching equipment' for that year amounted to $1,887,460, representing approximately 4.3% of the total national output during the first half and 4.4% during the last half of the year."

The affidavit sets forth six letters in an appendix [3] to show the only contractual relationships between Schwager-Wood Corporation and anyone in Illinois, and that the "arrangements" reflected in the letters never produced any sales of its products in Illinois, or any negotiations in Illinois to which it was a party. The correspondence is claimed to show on its face that the persons to whom the letters were addressed were independent contractors, and that Schwager-Wood Corporation had no control or authority whatsoever over these persons except to terminate the agreements, and the power to terminate was the only authority which it ever exercised or attempted to exercise over those persons.

The affidavit points out that the first of the relationships was terminated by it because "The response in the two years * * * does not justify any continuation of expense * * * in promoting our products." The second relationship was terminated because the other party stated he was not getting "the kind of co-operation from your company that I expect and that is necessary to get results. * * *" The writer stated that he had tried many times to contact and procure information from Schwager-Wood Corporation with no success, and

3. Exhibit 1 is a letter dated February 12, 1954, from Schwager-Wood Corporation to Herman H. Dejadon of Central States Engineering & Products Company appointing Dejadon Schwager-Wood Corporation's exclusive representative for one year for the sale of its product in a specified territory at a stated percentage commission. The arrangement was approved. When the corporate structure of the representative was changed it inquired of Schwager the requirements of a changeover as representative. Thereafter Schwager by letter of March 26, 1956, canceled the representation because the response in two years did not merit the representative's promotional expense.

A letter of May 1, 1956, from Schwager Corporation to Frank L. Frable appointed him exclusive representative for a year.

concluded his letter by asking for instructions on immediate disposition of the sample switches that he had.

The supplemental affidavit of Mr. Schwager, filed January 4, 1962, also reveals that the business which defendant, Schwager-Wood Corporation, had conducted prior to its dissolution on November 6, 1959, is now conducted by Schwager-Wood Company, Inc., also an Oregon corporation, of which he is president and Mr. William Maxwell Wood is vice president and secretary. He states that there was received between November 6, 1959, and the present time at Portland, Oregon, four unsolicited orders from the Milwaukee, Wisconsin, office of Line Materials Industries, of an aggregate invoice value of $1,812.80, less than ½th of 1% of Schwager-Wood's 1960 gross sales; during the same period it also received from the same Company's Melrose Park office, two unsolicited orders totaling $1,268.10 (less than ½th of 1% of said gross sales). The shipments were delivered f. o. b. Portland for consignment into the Northern District of Illinois, in accordance with instructions from the Line Materials Industries. He believed the said company to be a subsidiary or division of McGraw-Edison Company, that the Schwager Company itself had no corporate affiliation with McGraw-Edison, or any other electrical manufacturer. He specifically stated that the Schwager Company received no other orders from and made no other shipments to, or for the account of any customer in the Northern District of Ilinois.

The pertinent statutes provide:

"Any person who shall be injured in his business or property by reason of anything forbidden in the anti-trust laws may sue therefor in any district court of the United States in the district in which the *defendant resides or is found* or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." 15 U.S.C.A. § 15. (Italics supplied.)

"Any suit, action, or proceeding under the anti-trust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any *district wherein it may be found or transacts business*; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." 15 U.S.C.A. § 22. (Italics supplied.)

"A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or *is doing business*, and such judicial district shall be regarded as the residence of such corporation for venue purposes." 28 U.S.C. § 1391 (c). (Italics supplied.)

[1–3] The Court is of the opinion that the defendant's motion to dismiss for lack of venue has sound legal foundation for the reasons (1) that the isolated, unsolicited sales of relatively unsubstantial amounts by defendant to one customer did not constitute the transaction of business; (2) that membership in a civil conspiracy does not *ipso facto* render a member subject to the jurisdiction of the forum of any other member, and (3) that the contracts of exclusive representation granted to residents of this area had been terminated long before the instant service was made, and were of small significance businesswise.

The six sales by defendant in Milwaukee and this District were unsolicited, and constituted but a fraction of one per cent of its total 1960 gross sales. This is not a "substantial" amount under the precedent cited infra. True, the six sales totaled $3,080.90, not an inconsequential amount, but when that sum is viewed in the perspective of defendant's total business and also of the overall sales of the entire industry,[4] it is readily apparent that the sales were of a very negligible proportion.

4. This factor was, however, held immaterial in Brandt, et al. v. Renfield Importers, Ltd., et al., 278 F.2d 904 (8th Cir. 1960).

■ While the phrase "transacts business" in the venue provision of the statute (15 U.S.C.A. § 22) has been held to have the broadest connotation of all the antitrust statutes for venue purposes,[5] still it embraces elements of substantiality of business done,[6] with continuity in character,[7] regularity,[8] contemporaneousness with time of service,[9] and not looking toward cessation of business.[10] The phrase was said to have been included in the statute to "increase the number of districts in which a corporation might be sued for violation of the antitrust laws," [11] and relieve "persons injured from the 'often insuperable obstacle' of resorting to distant forums for redress of wrongs. * * * " [12]

5. "From the beginning it has been held that the transacting business test can be met by fewer local contacts than the doing business test requires." Raul International Corporation v. Nu-Era Gear Corporation, 28 F.R.D. 368, 370, (D.C.N.Y. 1961).

A "practical and broader business conception of engaging in any substantial business operations." United States v. Scophony Corporation of America, et al., 333 U.S. 795, 807, 68 S.Ct. 855, 861, 92 L.Ed. 1091 (1948).

The term "transact business" refers to a "lesser degree of commercial activity than that required to establish the usual jurisdictional concept of 'doing business.' " Gem Corrugated Box Corporation, et al. v. Mead Corporation, et al., 189 F.Supp. 584, 586 (D.C.N.Y.1960).

Similarly, Eastman Kodak Company of New York v. Southern Photo Materials Company, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927) ; Periodical Distributors, Inc. v. The American News Co., Inc., C.C.H. Trade Regulation Service ¶70,011.

6. Eastman Kodak Company of New York v. Southern Photo Materials Company, 273 U.S. 359 (1927) ; Brandt, et al. v. Renfield Importers, Ltd. et al., 278 F.2d 904 (8th Cir. 1960) ; American Football League, et al. v. National Football League, 27 F.R.D. 264 (D.C.Md.1961) ; Raul International Corporation v. Nu-Era Gear Corporation, 28 F.R.D. 368 (D.C.N.Y. 1961) ; Donlan v. Carvel, et al., 193 F. Supp. 246 (D.C.Md.1961) ; United States v. Scophony Corporation of America, et al., 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948) ; McManus v. Capital Airlines, Inc., et al., 166 F.Supp. 301 (D.C. N.Y.1958) ; Westor Theatres v. Warner Bros. Pictures, 41 F.Supp. 757 (D.C.N.J. 1941) ; Periodical Distributors, Inc. v. The American News Co., Inc., C.C.H. Trade Regulation Service, ¶70,011 ; Toulmin's Anti-Trust Laws, Vol. VI, § 4.14.

The Raul decision, supra, involved "at least one hundred different transactions." In Bruner, et al. v. Republic Acceptance Corporation, et al., 191 F.Supp. 200, 204 (D.C.Ark.1961), it was said the transactions must be "sufficient, either qualitatively or quantitatively." In the Periodical decision, supra, it was said "sporadic purchases without more, are insufficient." In Donlan, supra, it was said "The amount or percentage necessary to make the business substantial may vary, depending upon the context in which the question arises." (193 F.Supp. P. 248)

7. The Donlan decision, supra, stressed continuity, although the dollar amount there involved was small. American Football League, et al. v. National Football League, 27 F.R.D. 264 (D.C.Md.1961) ; Brandt, et al. v. Renfield Importers, Ltd., et al., 278 F.2d 904 (8th Cir. 1960) ; United States v. Scophony Corporation of America, et al., 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948) ; Eastman Kodak Company of New York v. Southern Photo Materials Company, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927) ; Westor Theatres, Inc., et al. v. Warner Bros. Pictures, Inc., et al., 41 F.Supp. 757 (D.C.N.J. 1941). The Brandt case, 278 F.2d 904, 910, specified "more than mere isolated bargains of sale" and the Scophony case, supra, 333 U.S. page 819, 68 S.Ct. page 867, called for not only "casual" act of contracting, and "more than episodic" transactions.

8. American Football League, et al. v. National Football League, 27 F.R.D. 264 (D.C.Md.1961).

9. "The defendant must be, at the time process is issued, transacting business in the district. If it had merely transacted business in the past that is not enough to authorize the service of process." Toulmin's Anti-Trust Laws, Vol. VI, § 4.14 ; American Football League, et al. v. National Football League, 27 F.R.D. 264 (D. C.Md.1961).

10. United States v. Scophony Corporation of America, et al., 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948) ; Toulmin's Anti-Trust Laws, Vol. VI, § 4.14.

11. American Football League, et al. v. National Football League, 27 F.R.D. 264 (D.C.Md.1961).

12. United States v. Scophony Corporation of America, et al., 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948) ; Eastman Ko-

The term "transacting business" is to be construed in the ordinary and practical, everyday, usual commercial sense,[13] instead of the previous "hair-splitting legal technicalities encrusted upon the 'found,'—'present'—'carrying-on-business' sequence."[14] It "relieved persons injured through corporate violations of the anti-trust laws from the 'often insuperable obstacle' of resorting to distant forums for redress of wrongs done in the places of their business * * *."[15] But the Congressional purpose has been held to "enlarge the jurisdiction of the district courts to establish the venue of a suit under the antitrust laws not only where a corporation resides or is 'found',"[16] a much "broader meaning for establishing venue than the concept of 'carrying on business' denoted by 'found' under the pre-existing statute and decisions."[17] Section 12 is to be liberally construed,[18] it being "designed to broaden the choice of forum available * * *."[19]

The Court concludes, as did the Second Circuit's Court of Appeals in Bertha Building Corporation v. National Theatres Corporation, 2 Cir., 248 F.2d 833, 836 (1957), that it cannot bring itself "to accept the suggestion in Giusti v. Pyrotechnic Industries, 9 Cir., 156 F.2d 351,[20] that because of the presence within the jurisdiction of one co-conspirator all foreign corporations which are alleged to be co-conspirators are amenable to process."[21] That Court said, at p. 836, of 248 F.2d, it thought such "doctrine inherently unsound * * *." A very recent similar holding is Bruner, et al. v.

dak Company of New York v. Southern Photo Materials Company, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927).

13. Raul International Corporation v. Nu-Era Gear Corporation, 28 F.R.D. 368 (D. C.N.Y.1961); Eastman Kodak Company of New York v. Southern Photo Materials Company, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927); Donlan, et al. v. Carvel, et al., 193 F.Supp. 246 (D.C.Md. 1961); United States v. Scophony Corporation of America, et al., 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948); Bruner, et al. v. Republic Acceptance Corporation, et al., 191 F.Supp. 200 (D.C.Ark. 1961); McManus v. Capital Airlines, Inc., et al., 166 F.Supp. 301 (D.C.N.Y. 1958); Westor Theatres v. Warner Bros. Pictures, 41 F.Supp. 757 (D.C.N.J.1941); Periodical Distributors, Inc. v. The American News Co., Inc., C.C.H. Trade Regulations Service, ¶70,011; Toulmin's Anti-Trust Laws, Vol. VI, § 4.14.

14. Donlan et al. v. Carvel et al., 193 F. Supp. 246 (D.C.Md.1961).

15. Donlan et al. v. Carvel et al., 193 F. Supp. 246 (D.C.Md.1961).

16. Donlan et al. v. Carvel et al., 193 F. Supp. 246 (D.C.Md.1961); United States v. Scophony Corporation of America, et al., 333 U.S. 795 (1948); Eastman Kodak Company of New York v. Southern Photo Materials Company, 273 U.S. 359, 47 S. Ct. 400, 71 L.Ed. 684 (1927); (The Eastman case said at p. 372, the "jurisdiction of the district courts was materially enlarged."); Independent Productions Corporation, et al. v. Loew's, Incorporat-

ed, et al., 148 F.Supp. 460 (D.C.N.Y. 1957); Toulmin's Anti-Trust Laws, Vol. VI, § 4.14.

17. United States v. Scophony Corporation of America, et al., 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948); Independent Productions Corporation, et al. v. Loew's, Incorporated, et al., 148 F.Supp. 460 (D. C.N.Y.1957); Periodical Distributors, Inc. v. The American News Co., Inc., C. C.H. Trade Regulations Service ¶70,011. In the Periodical's case, it was phrased thus: "Congress has substantially expanded the previous law."

18. Bruner, et al. v. Republic Acceptance Corporation, et al., 191 F.Supp. 200 (D. C.Ark.1961).

19. Gem Corrugated Box Corporation et al. v. Mead Corporation et al., 189 F.Supp. 584 (D.C.N.Y.1960).

20. Similarly, McManus v. Capital Airlines, Inc., et al., 166 F.Supp. 301 (D.C.N.Y. 1958); Independent Productions Corporation et al. v. Loew's, Incorporated et al., 148 F.Supp. 460 (D.C.N.Y.1957); Goldlawr, Incorporated v. Shubert et al., 169 F.Supp. 677 (D.C.Pa.1958); s. c., 288 F.2d 579 (2d Cir. 1961); Hansen Packing Co. v. Armour & Co. et al., 16 F. Supp. 784 (D.C.N.Y.1936); Westor Theatres, Inc. et al. v. Warner Bros. Pictures, Inc., et al., 41 F.Supp. 757 (D.C.N.J. 1941); Waldron, etc. v. British Petroleum Co., Ltd., 149 F.Supp. 830 (D.C.N.Y. 1957).

21. Similarly, Ross-Bart Port Theatre, Inc. v. Eagle Lion Films, Inc., et al., 140 F. Supp. 401 (D.C.Va.1954).

Republic Acceptance Corporation, et al., 191 F.Supp. 200 (D.C.Ark.1961), which differentiates precedent as concerning *criminal* prosecutions (or Government civil suits) for conspiracy, as did the District Court in Independent Productions Corporation, et al. v. Loew's, Incorporated, et al., 148 F.Supp. 460 (D.C. N.Y.1957), and Westor Theatres, Inc., et al. v. Warner Bros. Pictures, Inc., et al., 41 F.Supp. 757 (D.C.N.J.1941).

Support to this view is given by the dictum in Bankers Life & Casualty Co. v. Holland, Chief Judge et al., 346 U.S. 379, at p. 384, 74 S.Ct. 145 at page 148, 97 L.Ed. 1361 (1953), where the Supreme Court said:

"While a criminal action under the antitrust laws lies in any district where the conspiracy was formed or in part carried on or where an overt act was committed in furtherance thereof, Congress by 15 U.S.C. § 15 placed definite limits on venue in treble damage actions. Certainly Congress realized in so doing that many such cases would not lie in one district as to all defendants, unless venue was waived. It must, therefore, have contemplated that such proceedings might be severed and transferred or filed in separate districts originally. Thus petitioner's theory has all the earmarks of a frivolous albeit ingenious attempt to expand the statute."

The Court in the Periodical decision (C.C.H. Trade Regulations Service, ¶ 70,-011) supra, says of the Giusti holding:

"The effect of an allegation of conspiracy on venue has been a matter extensively considered in the cases. There appears to be a conflict in the courts as to whether or not such an allegation is sufficient for a finding of venue. This conflict is, in fact, more apparent than real. It springs from Giusti v. Pyrotechnic Industries, Inc., 156 F.2d 351 (9th Cir. 1946).

"Although the Giusti case has been cited for the proposition that once acts of conspiracy are alleged to have taken place within the district venue will lie, this is a result of too broad a reading of the case. In fact, the situation was that the acts alleged, in addition to being overt acts in fulfillment of a conspiracy and acts of monopolization, were themselves the conduct of the business. The acts alleged, and apparently proved were coincidental to those necessary to establish that the defendant was transacting or doing business within the district. Thus the case stands for no more than that where the acts of conspiracy and monopolization are identical with the business of the corporation, then if the plaintiff sustains his burden of jurisdictional proof, he has, in fact, established that the defendant is doing business or transacting business, and that venue is properly laid * * *. The argument that a court has venue over an antitrust action where it is alleged that acts of conspiracy have taken place within the district, was rejected by the Second Circuit in Bertha Building Corp. v. National Theatres Corp., [2 Cir.] 248 F.2d 833 * * *. Prior to the Circuit decision in Bertha, the broad reading of Giusti met a broad base of opposition. This Court itself has said: 'The mere allegation of conspiracy would hardly seem sufficient to establish venue in the absence of some showing that the defendant was found in the district or was transacting business in the District.' * * * Mere allegation of participation in a conspiracy was again held not to invest the court with jurisdiction and venue * * * [Citing several cases]. The mere allegation of a conspiracy or that acts in furtherance of the conspiracy were performed within the district is insufficient to support venue. Where the conspiracy has been proven, and the acts established are coincident with those of doing business or transacting business, then venue is proper, but for a different reason. The reason in that case is that the

defendant may be found to be doing or transacting business within the district."

Inasmuch as the contracts for exclusive representation of Schwager-Wood Corporation in this District had expired long before the instant suit was filed, and had been fruitless during their existence, and sales by said defendant in this forum had been to but one customer, had been unsolicited, and had constituted but a very minute part of its total sales, the conclusion seems inescapable that the defendant did not transact business within this District within the meaning of the venue provisions of antitrust acts. The transactions were unsubstantial; they were not continuous. Finally, even if it should be proved that Schwager-Wood Corporation was a member of the alleged conspiracy, membership per se does not render each member thereof liable to process on the theory of agency of each conspirator for the other, in the forum of every other conspirator.

The motion of Schwager-Wood Corporation to dismiss the cause as to it for improper venue is granted, and the cause is hereby dismissed as to Schwager-Wood Corporation.