**ABC GREAT STATES, INC., et al.,**
**Plaintiffs,**

v.

**GLOBE TICKET COMPANY et al.,**
**Defendants.**

**No. 68 C 1690.**

United States District Court,
N. D. Illinois, E. D.

March 24, 1970.

Samuel W. Block, Jenner & Block, Chicago, Ill., Daniel H. Margolis, Washington, D. C., for plaintiffs ABC Great States, Inc., et al.

Ronald M. Dietrich, McBride, Baker, Wienke & Schlosser, Chicago, Ill., for defendants Globe Ticket Co. et al.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS FOR IMPROPER VENUE

ROBSON, District Judge.

This is a consolidation of several private, treble damage antitrust actions alleging a nation-wide price-fixing and market allocation conspiracy in the ticket industry beginning at least in 1952 and continuing to the filing of the complaint (September, 1968) in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. The cases have been consolidated in this court for discovery and pretrial proceedings after transfers made under 28 U.S.C. § 1407. One corporate and five individual defendants in actions originally brought in the Northern District of Illinois have moved to dismiss for improper venue. This court has previously ruled that venue is to be determined as of the time the cause of action arose, *i. e.*, 1952–1968, and that the special antitrust venue statutes, 15 U.S.C. §§ 15 and 22, are supplemented by the general venue statutes, 28 U.S.C. § 1391 *et seq.* Memorandum and Order on Defendants' Objections to Plaintiffs' Venue Discovery Motions, October 16, 1969, 304 F.Supp. 1052. This court will consider the corporate and the individual defendants separately due to their differing statutory venue provisions.

## I. THE CORPORATE DEFENDANT

The National Ticket Company argues that it is not an inhabitant of this District nor is it found or does it transact business here under 15 U.S.C. § 22, the

special antitrust venue provision for corporations. It further argues that no claim arose here as to it and that it is not doing business under the general venue statute, 28 U.S.C.A. § 1391(b) (c). Without reaching the other venue bases, this court is of the opinion that its motion should be denied on the grounds that it transacts business here within the meaning of 15 U.S.C. § 22.

█ The term "transacts business" of Section 22 has been held to mean the carrying on of business "of any substantial character," and the measure is to be a "practical, nontechnical, business standard." United States v. Scophony Corp., 333 U.S. 795, 808, 68 S.Ct. 855, 92 L.Ed. 1091 (1948). Factors to be considered under the above test are substantiality of the business, continuity in character, regularity, and extent of business solicitation and promotion within the District. Commonwealth Edison Co. v. Federal Pacific Electric Co., 208 F. Supp. 936 (N.D.Ill.1962); State of Illinois v. Harper & Row Publishers, Inc., 308 F.Supp. 1207 (N.D.Ill.).

█ It is clear that National Ticket Company is not an inhabitant of Illinois, is not licensed to do business here, and has no sales office in this District. The evidence shows, however, that during the period January, 1960, to March, 1969, National made sales to customers in Illinois in the amount of $146,351.39, or an average of approximately $14,500 per year. In this District specifically, sales for 1965–October, 1968, amounted to $71,129.09, or $17,800 per year. The evidence also shows that for the years 1966–1969, the only years for which records are available, National made purchases within Illinois of $3,690.78. Solicitation of Illinois business is regularly conducted by officers and employees of National Ticket Company from sales offices in New York and Los Angeles, and officers of the company have traveled to Chicago annually since 1958 to attend the International Association of Amusement Parks Convention during which significant amusement park ticket business is generated. The fact that most contacts made at the convention are with non-Illinois purchasers does not detract from the fact that the contacts are made in this District.

█ This continuous course of conduct in the District is substantial and is sufficient to meet the Section 22 venue standard of transacting business. State of Illinois v. Harper & Row Publishers, Inc., supra. Though the sales amounted to 1.7% of the company's total sales volume, the amount cannot be considered a "very negligible proportion" viewed against an everyday, business standard, Commonwealth Edison Co. v. Federal Pacific Electric Co., supra, 208 F.Supp. at 939, especially in the full context of National's activities in the Northern District. National Ticket Company's motion to dismiss for improper venue will therefore be denied.

## II. THE INDIVIDUAL DEFENDANTS

J. Edward Ludes and John J. Conway of the National Ticket Company, Clifford Elliott and John B. Elliott of the Elliott Ticket Company, and William F. Gillenwater of Arcus-Simplex-Brown, Inc., argue that they do not reside, are not found, and do not have an agent in this District under 15 U.S.C. § 15, the special anti-trust venue statute applicable to individual defendants. They further argue that no claim arose as to them within the District under Section 1391(b). Without reaching the other bases of venue, this court is of the opinion that venue is proper here as to John J. Conway, Clifford Elliott, and John B. Elliott because this is the District where the claim arose against them. This court is of the further opinion that venue is improper as to William F. Gillenwater and J. Edward Ludes on all bases.

█ This court is in agreement with Judge John W. Lord in Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., 291 F.Supp. 252, 260–261 (E.D.Pa.1968),

concerning the application of Section 1391(b) to antitrust actions:

"It is submitted that 'where the claim arose' should be dependent upon where the contacts weigh most heavily. A 'weight of the contacts' test would enable venue to exist in a district where the injury occurred, if significant sales causing substantial injury were made to plaintiffs there by defendants. If some other overt act pursuant to the conspiratorial meetings took place in a district and it was a significant and substantial element of the offense, then venue would lie in that district. Conversely, if one insignificant sale was made in a district, as set forth above in the hypothetical, venue would not lie there. Similarly, if a meaningless and insignificant meeting of the conspirators took place in a certain district, venue would not exist there either."

Since the defendants and the plaintiffs are farflung and the conspiracy is alleged to have been nation-wide, significant sales causing substantial injury cannot be said to be the key consideration here. Rather, since the heart of the complaint against the individual defendants is that, in their capacities as high-ranking officers of their respective ticket companies, they conspired with one another to violate the antitrust laws, the most significant conspiratorial acts of the defendants would be the key to venue under Section 1391 in this case.

This court finds, on the basis of the necessarily limited venue discovery before the court, that the most significant conspiratorial acts occurred in the Northern District of Illinois. The main vehicle of the conspiracy is alleged to have been the meetings of a trade association, the Printing Institute of America, and particularly its Ticket and Coupon Section, of which the defendants' companies were members during the relevant period. Discovery shows that prices were discussed at these meetings and that at least one competitor was "badgered" about its low prices.

The founding session of the Ticket and Coupon Section was held in Chicago in 1956 and subsequent meetings were held in Chicago at least in the years 1958, 1959, and 1965, more than in any other location on the basis of the evidence before the court. Without reaching the merits of the claim, such meetings were most significant in giving rise to the claim alleged against the defendants, and therefore the weight of the contacts test under Section 1391(b) would place venue in this District.

The inquiry, however, does not end at this point, for unless the court were to resurrect the widely rejected coconspirator theory of venue, see State of Illinois v. Harper & Row Publishers, Inc., supra, 308 F.Supp. at 1207; Commonwealth Edison Co. v. Federal Pacific Electric Co., supra, 208 F.Supp. at 941, and Bankers Life & Casualty Co. v. Holland, 346 U.S. 379, 384, 74 S.Ct. 145, 98 L.Ed. 106 (1953), venue as to each defendant must be established independently. Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., supra, 291 F.Supp. at 262. On this basis, it is clear that venue here as to John J. Conway, Clifford Elliott, and John B. Elliott is proper. All participated in significant Chicago meetings of the Ticket and Coupon Section during the relevant period. Their motions to dismiss for improper venue will therefore be denied.

The record shows, however, that William F. Gillenwater attended no Printing Institute of America meetings whatsoever during the relevant period. His venue cannot depend upon Section 1391 therefore, and the court must apply 15 U.S.C. § 15. This court finds that Section 15 does not provide venue as to Mr. Gillenwater either. He is not a resident of Illinois, but is an officer of Arcus-Simplex-Brown, Inc., a ticket manufacturer incorporated and based in New York. His only contacts with this District are that he is president of Arcus-Simplex Pass Recorder, an Illinois corporation based in New York which is unconnected with the present actions,

and that he attends quarterly directors meetings of Arcus-Simplex-Brown, Inc., and Arcus-Simplex Pass Recorder in Chicago. All his other business contacts apparently are elsewhere.

The evidence before the court falls far short of a showing that Mr. Gillenwater is found or has an agent in this District under Section 15. The "enterprise" or "alter ego" theory of the plaintiffs in reliance on Country Maid, Inc. v. Haseotes, 299 F.Supp. 633 (E.D.Pa.1969), cannot be used on these facts to establish venue over this defendant simply because his company is a close corporation which may be found or may have an agent here. Congressional intent to provide different venue standards for corporations and individuals cannot be so easily circumvented. See United States v. National City Lines, Inc., 334 U.S. 573, 586–588, 68 S.Ct. 1169, 92 L.Ed. 1584 (1948). Venue as to Mr. Gillenwater is therefore improper in this District.

The evidence also shows that J. Edward Ludes attended no allegedly conspiratorial meetings in Chicago during the relevant period. The extent of his contacts in this District have been the attendance at three International Association of Amusement Parks Conventions in Chicago since 1958 and the Chicago '68 Print Show and his communications with National Ticket Company's Illinois customers from his New York sales office. Again the evidence falls far short of a showing that Mr. Ludes is found or has an agent in this District, and plaintiff's further "alter ego" theory is unwarranted by the facts before the court. Venue as to Mr. Ludes, therefore, does not lie in the Northern District.

As held by Judge Bernard M. Decker in State of Illinois v. Harper & Row Publishers, Inc., supra, 308 F.Supp. at 1207, the conclusion that venue is improper in this District does not require dismissal of the actions against Mr. Ludes and Mr. Gillenwater—they may be severed from the main actions, and their actions may be transferred "in the interest of justice" under 28 U.S.C. § 1406(a) to a district in which they "might have been brought" at the conclusion of these pretrial proceedings. See also Rains v. Cascade Industries, Inc., et al., 258 F.Supp. 974, 976–977 (S.D.N.Y.1966). Defendants Gillenwater and Ludes therefore will be severed from the main actions at this time, and this court will permit the parties to make appropriate applications for their transfer at the close of these pretrial proceedings.